The President, Directors and Company of the Bank of Utica, plaintiffs in error,

*against*

A. K. & G. M. Smedes and A. Camfield, defendants in error.

The endorsement and delivery of a promissory note to a bank, on its re-quest, is a sufficient consideration for an undertaking, on the part of the bank, to charge the endorser by a regular notice of non-payment ; and if they neglect to do this, the holder or owner of the note, to whom the promise is made, may maintain an action against them, and recover dam-ages for the neglect.

A count for such neglect would be good as a count for a misfeasance, the receipt of the note, and neglect to perform the undertaking, being prop-erly a mismanagement of the business undertaken The acceptance of the note by the bank may well be considered the first step in the exe-cution of the contract, and no other consideration is necessary.

Objections, not taken in the supreme court, can not be taken in the court of errors.

A corporation may make any contract, to do an act at any place, if such contract be within the scope of its general powers.

It seems, that a statute incorporating a bank is, in its nature, a public stat-ute.

The declaration stated that the bank of *Utica* had, pursuant to the act of the legislature, passed the 10*th* day of *April*, 1815, established an office of discount and deposit in *Canandaigua*. *Held*, a sufficient recital of the act in pleading, though it should be considered a private act ; es-pecially after verdict.

The declaration alleged that the defendants had undertaken to charge the first endorser of notes payable on demand ; and set forth this first en-dorsement of the notes to the plaintiffs as having been made on a day cer-tain—the endorsement and delivery of the notes, by the plaintiffs, to the

ALBANY,
April, 1824.

Bank of Utica
v.
Smedes.

defendants, about six months thereafter—and their undertaking at the latter time. *Held* sufficient, especially after verdict, though the declaration did not aver that the demand of payment was made within a reasonable time.

What is a reasonable time, within which a note payable on demand should be presented for payment, in order to charge an endorser, depends on all the facts of the case, to be proved at the trial.

The power of a verdict to cure formal defects in pleading, should be liberally applied.

ERROR, from the Supreme Court. The cause was tried, in the Court below, at the *Ontario* circuit, in *June*, 1821, before (the late) Mr. Justice *Yates* ; the venue, which was originally laid in the county of *New-York*, having been changed by an order of the Court.

The declaration, the only part of the proceedings questioned upon the writ of error, consisted, beside the money counts, of 3 special counts, the first of which was as follows:

*City and county of New-York, ss. The President, &c. of the Bank of Utica*, were summoned to answer *A. K. Smedes*, &c. of a plea of trespass on the case, &c. ; and thereupon the said *A. K. Smedes*, &c. by *Evert A. Bancker*, their attorney, complain for this, to wit, that whereas, on the 14*th* day of *February*, 1818, and before and since that time, at the 1st ward in the city of *New-York*, and in the county of *New-York*, *A. K. Smedes*, *G. M. Smedes* and *Abiel Camfield*, plaintiffs, were merchants and co-partners in trade, under the name, style and firm, of *A. & G. Smedes & Camfield* ; and whereas, also, the before named defendants, the *President, &c. of the Bank of Utica*, on the day and year aforesaid, and before and since that time, pursuant to the act of the legislature of the state of *New-York*, passed the 10*th* day of *April, A. D.* 1815, had established an office of discount and deposit in *Canandaigua*, to wit, at the 1st ward in the city of *New-York*, and in the county of *New-York*, and were then and there transacting and doing business as bankers, by virtue of the act aforesaid, under the name, style and description of the *Utica Branch Bank in Canandaigua;* and whereas, also, on the 12*th* day of *August, A. D.* 1817, at, &c.

ALBANY,
April, 1824.

Bank of Utica
v.
Smedes.

to wit, at, &c. *Punderson B. Underhill* and *Harris Seymour* were merchants and copartners in trade, under the name, style and firm of *Underhill & Seymour ;* and whereas, also, on the said 12*th* day of *August, A. D.* 1817, the before named *P. B. Underhill* and *H. Seymour*, at, &c. to wit, at, &c. or one of them, for and in the name of the said firm of *Underhill & Seymour,* made a certain note in writing, commonly called a promissory note, bearing date the same day and year last aforesaid, and then and there delivered the said note to a certain *John C. Spencer ;* by which said note, the said *P. B. Underhill* and *H. Seymour*, under the name and signature of *Underhill & Seymour*, promised to pay to the order of the said *John C. Spencer*, by the name and description of *John C. Spencer,* Esquire, at the *Utica Branch Bank*, 1237 dollars, with interest from date, for value received : and the said *J. C. Spencer,* to whom, or to whose order, the payment of the said sum of money mentioned in the said note, was to be made as aforesaid, afterwards, and before the payment of the said sum of money mentioned in the said note, or any part thereof, and also before the time limited and appointed by the said note for the payment thereof, to wit, on the same day and year last aforesaid, at &c. to wit, at &c., endorsed the said note in writing, with his proper name and signature of *J. C. Spencer*, and by that endorsement, ordered and appointed the contents of the said note to be paid to the before named *A. K. Smedes, &c.* the before named plaintiffs ; and then and there delivered the said note, so endorsed, to the said *A. K. Smedes*, &c. ; and the said *A. K. Smedes. &c.* to whom, or to whose order, the payment of the said sum of money, mentioned in the said note, was to be made as aforesaid, afterwards, and before the payment of the said sum of money, mentioned in the said note, or any part thereof, and also before the time limited and appointed by the said note, for the payment thereof, to wit, on the day last aforesaid, at, &c. to wit, at, &c. endorsed the said note in writing, with the name and signature of the said firm of *A. & G. Smedes* and *A. Camfield*, and, by that endorsement, ordered and appointed the contents of the said note to be paid to the before named defendants, *The*

*President*, &c. at the *Utica Branch Bank* in *Canandaigua*: and the said plaintiffs, for the more effectual recovery and collection of the moneys in the said note specified, according to the tenor and effect of the said note, and of the said endorsements so made thereon as aforesaid, afterwards, to wit, on the 14*th* day of *February*, A. D. 1818, at, &c. to wit, at, &c. caused the said note to be deposited at the office of discount and deposit established by the defendants, pursuant to the statute in such case made and provided, under the name and style of the *Utica Branch Bank* at *Canandaigua*, aforesaid, to be collected by the said defendants, in behalf of them, the before named plaintiffs. And the said *President, Directors and Company of the Bank of Utica*, in the village of *Utica*, the before named defendants, thereupon, to wit, on the said 14*th* day of *February*, A. D. 1818, at, &c. to wit, at, &c. in consideration that the said plaintiffs had so endorsed and deposited the said note for collection, in manner and form aforesaid, thereupon assumed upon themselves, and then and there faithfully undertook to present the said note. and demand payment of the sum of money specified in the same, from the said *P. B. Underhill* and *H. Seymour*, according to the tenor and effect of the said note, and of the several endorsements so made thereon as aforesaid ; and in case default should be made in the payment of the said sum of money in the said note mentioned, or of any part thereof, by the said *P. B. Underhill* and *H. Seymour*, as aforesaid, then the before named defendants, *The President*, &c. in the village of *Utica*, further assumed upon themselves, and then and there, in consideration of certain reasonable fees and rewards, to be therefore paid by the said plaintiffs to the said defendants, they the said defendants undertook, according to the usage and custom of merchants, well and truly to notify, or cause notice to be given, to *J. C. Spencer*, the before named endorser, of the non-payment and protest of the said promissory note. and by such notice, by force of the statute in such case made and provided, render the said *J. C. Spencer* liable as indorser for the payment of the said sum of money, in the said

note specified, according to the tenor and effect of the said note, and of the said endorsement, so by the said *J. C. Spencer* thereon made, as aforesaid. And the said plaintiffs, in fact, say, that the said *P. B. Underhill* and *H. Seymour,* afterwards, to wit, on the 14*th* day of *February*, A. D. 1818, at, &c. to wit, at, &c. did neglect to pay the said sum of money in the said note specified, according to the tenor and effect of the said note, and of the said endorsements, so thereon made as aforesaid, and did then and there wholly refuse and make default therein ; and although it became and was the duty of the said *President*, &c. under and by virtue of the said undertaking, to cause due notice to be given of the non-payment and protest of the said promissory note, to the said *J. C. Spencer*, endorser as aforesaid ; yet the said *President*, &c. not regarding their duty in that behalf, nor their undertaking aforesaid, in form aforesaid made, but contriving and fraudulently intending to injure and defraud the before named plaintiffs, *A. K. Smedes*, &c. in this behalf, did not nor would well and truly notify, or cause due notice to be given to the said *J. C. Spencer*, endorser as aforesaid, of the non-payment of the said promissory note, by the said *P. Underhill* and *H. Seymour*, but wrongfully and injuriously, afterwards, to wit, on the 14*th* day of *February*, A. D. 1818, at, &c. to wit, at, &c. wholly neglected and refused so to do ; and by reason of the default and neglect of the defendants aforesaid, the said *A. K. Smedes*, &c. for want of evidence of such due notice to the said *J. C. Spencer*, endorser as aforesaid, have not only failed and been defeated in their suit subsequently instituted in the Supreme Court of Judicature of the People of the state of *New-York*, for the recovery of the moneys in the said promissory note specified, from the said *J. C. Spencer*, endorser as aforesaid ; but in pursuance of the judgment had and obtained against them, the before named plaintiffs in the suit aforesaid, and entered up in favour of the said *J. C. Spencer*, in the said Supreme Court, &c. on the 4*th* day of *October*, A. D. 1819, at, &c. to wit, at, &c. have been compelled to pay and did pay, on, &c. 29 dollars and 12 cents to the said *J. C. Spencer*, as well for his costs and charges in and about his

defence in the said action, as for the Sheriff's fees and poundage in serving a writ of *fi. fa.* issued in pursuance of, and by virtue of the judgment aforesaid ; and the said plaintiffs, by reason of the said judgment so had and obtained against them, were further rendered liable and are still liable, to pay a large sum of money, to wit, the sum of 75 dollars, for their costs and charges accrued in and about the prosecution of the said action, to wit, at, &c. and have lost and been deprived of the means of recovering the same from the said *J. C. Spencer*, endorser as aforesaid, to the damage, &c. $2000, of all which the said defendants, on, &c. at, &c. had notice.

ALBANY,
April, 1824.

Bank of Utica
v.
Smedes.

The second count was substantially the same with the first, except that the consideration of the promises by the defendants below was alleged to be that the plaintiffs had, at the defendants' request, employed them to present and demand the note of the makers, and had, at the defendants' like request, employed them, for certain reasonable fees and rewards, &c. to protest and give notice, &c.

The 3d count was as follows : And whereas also, heretoto wit, on the said 14*th* day of *February,* 1818, at, &c. in consideration that the said plaintiffs, at the special instance and request of the said defendants, would endorse and deliver to them the said defendants, a certain other promissory note in the words and figures following, to wit: " *Canandaigua, August,* 12*th*, 1817. Six months after date, we promise to pay to the order of *John C. Spencer, Esq.* at the *Utica Branch Bank,* twelve hundred and thirty seven dollars, for value received, with interest from date. *Underhill & Seymour.* Dolls. 1237,00 ;" which said note had been, theretofore, to wit, on the said 12*th* day of *August,* A. D. 1817, at, &c. to wit, at, &c. according to the statute in such case made and provided, and agreeable to the usage and custom of merchants, duly endorsed by the said *J. C. Spencer,* (to whom, or to whose order the said note was made payable,) to the before named plaintiffs, and had also, according to the usage and custom of merchants, been duly endorsed by the before named plaintiffs, to the said defendants, or order, with intent that the said defendants might, as the hold-

ers thereof, according to the usage and custom of mer-
chants, and by the force of the statute in such case made
and provided, receive and collect the monies in the said
note specified, for the account, use and benefit of the said
plaintiffs ; and in case the said note should not be paid by
the said *P. B. Underhill* and *H. Seymour*, at the time and
place specified in the said note, according to the tenor and
effect thereof, and of the endorsements so thereon made as
aforesaid, with the further intent that they, the said defend-
ants, should then and there, according to the usage and cus-
tom of merchants, and by force of the statute in such case
made and provided, protest or cause to be protested the
said promissory note, and notify or cause to be notified the
said *J. C. Spencer*, endorser as aforesaid, of the non-pay-
ment of the said sum of money in the said note mentioned,
according to the tenor and effect of the said note and of the
endorsements so thereon made as aforesaid, they the said de-
fendants undertook and then and there faithfully promised,
that they, the said defendants, would duly present the said
note to the said *P. B. Underhill* and *H. Seymour*, the draw-
ers thereof, at the *Utica Branch Bank* in *Canandaigua*, on
the said 14*th* day of *February*, A. D. 1818 ; and in case the
said *P. B. Underhill* and *H. Seymour* should make default,
or neglect to pay the said note, the said defendants under-
took and then and there faithfully promised to protest, or
cause the said note to be protested for the non payment
thereof, and duly to notify or cause due notice to be given,
to the said *J. C. Spencer*, endorser as aforesaid, of the neg-
lect and default of the said *P. B. Underhill* and *H. Seymour*,
in not paying the said sum of money in the said note speci-
fied, according to the tenor and effect thereof, and of the
endorsements so thereon made as aforesaid. And the said
plaintiffs, in fact, say, that they, the said plaintiffs, confiding
in the promise and undertaking aforesaid, by the said de-
fendants, in form aforesaid made, did afterwards, to wit, on
the 14*th* day of *February*, A. D. 1818, deliver to the said de-
fendants, at their office of discount and deposit, styled the
*Utica Branch Bank in Canandaigua*, the said note endorsed
as aforesaid, for the purpose aforesaid. Yet the said defend-

ants, not regarding the said promise and undertaking, but contriving and intending to injure the said plaintiffs, in that behalf, did not, nor would notify, or cause due notice to be given to the said *J. C. Spencer*, endorser as aforesaid, of the neglect and default then and there made of the said *P. B. Underhill* and *H. Seymour*, in failing to pay the said sum of money in the said note mentioned, according to the tenor and effect thereof, and of the said endorsements so thereon made, as aforesaid ; but did then and there wholly fail and make default therein ; by means whereof the plaintiffs have wholly lost and been deprived of the said sum of money in the said note mentioned, to the great damage of them the said plaintiffs, to wit, of, &c. of which premises the said defendants, afterwards, to wit, on, &c. at, &c. had notice.

*Plea*, the general issue.

There was a general verdict for the plaintiffs below, upon all the counts in the declaration, for $1610,03, upon which the Court below gave judgment in *January* term, 1823, for the reasons given, 20 *John. Rep.* 377 *to* 385, *S. C.* where the evidence necessary to sustain these counts was very fully considered by Woodworth, J. who delivered the opinion of the Court upon a case made. There being no special verdict or bill of exceptions, the evidence was not before this Court ; but the cause went entirely upon the sufficiency of the declaration. Much of Judge *Woodworth's* opinion will, however, be found applicable to the questions raised here.

*P. S. Parker*, for the plaintiffs in error, remarked, generally, that where there is a substantial defect in a declaration, the defendant may avail himself of it by demurrer, motion in arrest, or writ of error. The verdict in this case is general, upon all the counts, three of which are special ; and if either be defective in substance, our writ of error is sustained. It is true, Courts have gone as far as possible in the amendment of the proceedings below, by entering the verdict upon the good counts, if warranted by the minutes of the Circuit Judge. Nothing of that kind, was, however, done in this case.

1. There does not appear, in any part of the declaration, an authority in the defendants below to transact banking business at *Canandaigua.* There is no statute recited or set forth, giving them such authority, and there is no public act to that effect. It will hardly be contended, that a bank has an incidental right to establish offices of discount and deposit ; nor is there any thing, in the original charter of the *Bank of Utica,* giving them such a right. Then, if there was any authority to do this, it should have been specially shewn. The plaintiffs below did not seek to recover of any officer of the branch, but of the mother bank—not for the act or omission of the bank, but for the fault of an individual. If the *Bank of Utica* had no right to erect this office, they are not liable ; and, in all cases, where a party seeks to establish a right in virtue of a private act, as this must be, he must plead the act as he would any other record. True, the declaration refers generally to an act authorizing the establishment of an office at *Canandaigua,* but the act itself should be set forth specially, to shew the connexion between the mother bank and the agent. (1 *Chit. Pl.* 218. 1 *Bl. Com.* 86. *Bac. Abr. Statute,* (*L*).) Here even the title of the statute is not mentioned.

2. The 1st and 2d counts of the declaration set forth a note payable on demand ; and no cause of action could arise against the defendants below, for negligence in not presenting such a note for payment, and in omitting to notify the endorser 6 months after it was due. No time of payment being specified in the notes, they were due and demandable immediately. (*Thompson* v. *Ketcham,* 8 *John. Rep.* 192. *Herrick* v. *Bennett, id.* 374. *Sheehy* v. *Mandeville,* 7 *Cranch,* 217.) The notes are stated, in both these counts, to have been made and dated on the 12*th August,* 1817 ; to have been endorsed by *Spencer* at that time ; and to have been deposited in the bank on the 14*th* day of *February,* 1818 ; at which time the defendants below promised to make demand and give notice. What duty was imposed upon the defendants ? Of what avail were a demand and notice at that late day ? Two months and a half have been holden an unreasonable delay. This must depend on circumstan-

ces ; such as the distance between the residence of the holder and the other parties. In this case, there would be a material difference, as to time, between a residence of the drawers in *South Carolina*, and the village of *Canandaigua* ; and nothing appears that they did not reside at the latter place. But suppose they resided at the city of *New-York*, at the date of the note—a demand might have been made, and the usual time of communication, which is but a few days, between these places, would have carried notice of non-payment to *Canandaigua*. There is an allegation that the plaintiffs below brought a suit against the endorser, and were defeated, with costs, for want of due notice. This appears, on the face of the declaration, to have been their own fault. (*Chitty on Bills*, 350.)

3. There is no sufficient consideration set forth in the 3d count. The promise relied on was a *nudum pactum*. There is a wide distinction, in this respect, between a non-feasance and misfeasance. In the latter case, an action lies for negligence, though the undertaking be without consideration : otherwise for a non-feasance. In such case, a full and plain consideration must be clearly stated, to warrant an action. (*Thorne v. Deas,* 4 *John. Rep.* 84.) In the case cited, all the authorities are stated and considered.

That error will lie upon one count substantially bad, though the others be good, if the verdict be general, the Court are referred to *Hopkins* v. *Beedle,* (1 *Caines' Rep.* 347) *Grant* v. *Astle,* (*Doug.* 730) *Cheetham* v. *Tillotson,* (5 *John. Rep.* 430) and *Trevor* v. *Wall,* (1 *T. R.* 151.)

The distinction upon which we rely, between a non-feasance and misfeasance, is admitted by his honor Judge *Woodworth,* who delivered the opinion of the Court below upon the case made. He admits, that ordinarily, in the former case, there must be a complete consideration appearing upon the face of the declaration ; but he considers that banks form an exception. Where is the distinction ? Suppose this had been the case of an individual banker or broker ; would not the case be precisely the same in principle ? Is it true, of them, that the mere delivery of the paper, and the expected benefit to be derived from deposit, funds, facilities, &c. would form a legal consideration ? If not; why

otherwise as to incorporated banks ? The learned Judge adverts to the case of *Elsee* v. *Gatward*, (5 *T. R.* 143.) Now, in that case, the Judges agree, that if *Gatward* had performed, he might have had an action for his compensation against *Elsee ;* but this expectation of benefit was not allowed to form a consideration. Having done nothing towards the work, though it was in the line of his business as a carpenter, yet this circumstance did not make out a consideration. How is it possible to distinguish the two cases ? The very point decided in *Thorne* v. *Deas*, (4 *John. Rep.* 96) was, that an action will not lie in such a case. In this case, we admit, that if the bank had got the money in their vaults, they would have been liable ; but they were as much at liberty to attempt obtaining it or not, as *Gatward* was to undertake or omit the building. The only consideration alleged by this count is, that the plaintiffs would deliver the notes to be collected for the plaintiffs' benefit. This is no consideration at all. The delivery of the notes was no benefit to the defendants. It does not appear, by the declaration, that they could possibly derive any benefit.

4. The 3d count does not aver the non-payment of the note by the makers. This was an essential averment, and payment not being negatived, we have a right to infer that it was made at the day.

5. Neither of the counts aver that the makers were insolvent. Without this, the plaintiffs below could have sustained no damage.

*S. M. Hopkins*, for the defendants in error. The note in question, in fact, fell due on the 14*th* of *February*, 1818, as averred in the 3d count. The opinion of the Court below was given upon the merits of the case, as they appeared at the circuit, and has very little bearing upon the form of the declaration, which, alone, is questioned here. The informalities in the record were never brought to the view of the Court below in any shape ; and this furnishes us with one answer to the writ of error. It is, that the defendants below should have taken their objections in the Supreme Court, by demurrer or motion in arrest. We are not to be met, for

the first time with them, here. This was determined in the late case of *Colden* v. *Knickerbacker*, (2 *Cowen's Rep.* 31) which holds that, to warrant reviewing a point here, it must have been expressly passed upon by the Court below.

It is admitted, that the first and second counts aver a sufficient consideration ; but there is a clerical mistake, in not setting forth the note as payable at 6 months. In the third count, however, the note is truly set forth ; but this is said to be defective, in omitting to aver a sufficient consideration. The law does not require a full consideration. The merest trifle is sufficient. An attorney who engages to defend a suit for $5 received, is bound to a faithful discharge of his duty, and is fully amenable for all the damages arising from his neglect. Equally so, if he engages to defend upon the express or implied promise of his client to pay him the reasonable or legal fees. If he simply engage to defend a cause, without any thing farther, it is a mere naked promise ; but if any thing be done by the client, or any liability incurred, the attorney will be bound. The slightest loss or inconvenience, on the part of the promissee, makes a sufficient consideration. (1 *Com. on Cont.* 16, 17.) This is fully exemplified in the books. An executor is not bound without assets ; yet if he promise the creditor, " prove your debt and I will pay it," he is bound, on the condition being performed. A delivery of goods, in which one has only a special property, (*Bind* v. *Plain, Cro. Eliz.* 218) or mutual acceptance of bills to the same amount, is also a good consideration. So intermarriage with a third person. (*Brown et ux.* v. *Garborough, Cro. Eliz.* 63.) So performance of what the promissee was previously bound to do by an award. (*Foster* v. *Scarlet, Cro. Eliz.* 70.) So a promise to show a deed. (*Sturlyn* v. *Albany, Cro. Eliz.* 67. *id.* 150, S. C.) Doing an act for the benefit of a third person, at the defendant's request. (*Hunt* v. *Bate, Dy.* 272, *b.*) In the margin of this page, the plaintiff's sealing a lease is mentioned as a consideration, though it was of no consequence to the defendant. Now, in the 3d count, it is thus set forth : " In consideration that the said plaintiffs, at the special instance and request of the said defendants, would endorse and deliver to them, the

Vol. III.        86

said defendants, a certain other promissory note, in the words and figures following," &c. (*setting forth the note in question, and that it was endorsed and delivered.*) Here is a consideration, within the cases, fully stated. The endorsement and delivery put it upon the defendants to make the demand and give the notice; otherwise the plaintiffs' remedy against the endorser would be gone forever. The plaintiffs ceased to hold the note. They had put it out of their power, therefore, to make the demand, at the request of the defendants; and the mere fact that they had incurred this inconvenience was enough. The consideration is not merely formal, as supposed. The distinction between non-feasance and misfeasance is founded on the case of *Coggs* v. *Bernard*, (2 *Ld. Raym.* 909) and I had supposed this case would have been cited. It has not been; and, I presume, for the reason that it would make decidedly against the plaintiffs in error. The receipt of the property, and beginning to act about it, was holden enough, in that case, to bind the bailee to its prudent management, according to the terms of the bailment. Having the note in their possession, controlling it exclusively, and not acting at the proper time, became a deceit upon us, which worked a lasting injury. If the act is commenced, it must be finished—it must be well, truly, faithfully, and correctly done, according to the nature of the act to be performed—otherwise an action lies. In this case, an attorney undertakes to charge an endorser. *Coggs* v. *Bernard* is, that if you begin the trust, you must go through with it. I retain an attorney to defend, put my papers in his hands, and he omits to appear, by which I am damnified, in the loss of my cause, or otherwise—was it ever doubted that he would be liable? Here the papers are delivered, and no notice given; yet, say the bailees, " we might act our pleasure, and ruin you with impunity—we have a right to go on, and do the business at the halves, and yet you have no remedy for our carelessness." Is this to be tolerated? In *Coggs* v. *Bernard*, there were two objections—one, a want of consideration—the other, that the defendant was not shewn to be a common carrier. The objection, and all the reasoning in that cause, pre-supposed and admitted that the being a com-

mon carrier, whose business it is to convey goods, would have been sufficient to sustain the action. Here is a common collector ; and his honor Mr. Justice *Woodworth* rightly held, that the bank was liable, on the ground that this was in the ordinary course of their business, of which they made a profit. This abundantly appeared upon a consideration of the merits.

But if all the defects imputed to this declaration exist, they are cured by the verdict. The objection is to a title defectively set forth—not a defective title. (*Rex* v. *Landaff*, 2 *Str.* 1011.) In *Small* v. *Cole & Skinner*, (2 *Burr.* 1159, 1161) the demise was laid as having been made 30 years after the memorandum ; yet the Court held that this defect was cured by the verdict. *Dennison*, J. gave as a reason, that no doubt a proper title was proved upon the trial. *Com. Dig. Pleader*, (*C.*) 87, refers to various cases of the like character. One defect complained of is, that our declaration does not allege a neglect to pay the notes. But we say the defendants caused no notice to be given that payment was not made—an averment of non-payment which, to be sure, is somewhat circuitous and argumentative, but no ground of objection upon error. It is a mere formal defect, scarcely objectionable by special demurrer. No position is better settled, than that a verdict shall cure all that which may be supposed, from the record, to have been proved at the trial. Neglect was essential to maintain the action before the jury, and must have been proved. The omission, therefore, is cured. (*Hornsey* v. *Dimocke*, 1 *Ventr.* 119. *De La Barre* v. *Jones*, *Hardr.* 222. *Bull. N. P.* 321. *Hall* v. *Douglass*, *Barn.* 452. *Huffam* v. *Ellis*, 3 *Taunt.* 415.) Indeed, it is a negative averment, which it lay with the defendants to disprove. If this be not done, it is received as proved from the nature of the issue.

We must not, however, be considered as admitting that this declaration is substantially defective ; for we do not think this can be maintained. On the subject of what consideration is necessary, we also refer to *Com. Dig. Action upon the case upon assumpsit*, (*B.* 1, 2, 3.) In *Anonymous*, (2 *Ventr.* 45) the consideration alleged and held good was,

that the plaintiff paid to the defendant so much money, who assumed to pay a like sum into Court and appear—a case much like the present. The bank received a note, equivalent in itself to money, which, in the ordinary course of things, would produce to them its face in cash, from which they might have derived a benfit as a deposit. They are, at any rate, benefitted as much as the attorney was in *Ventris,* though they forthwith pay out the money. Again : if, in consideration that you will pay *A* such a sum of money, I promise to pay *B* the same sum, this binds me to the payment, though I derive no benefit from the consideration. *(Com. Dig. Action upon the case upon assumpsit, (B.)* 11.) Again : if the plaintiff will permit the defendant to receive money of *A,* which he owes the plaintiff, the defendant promises to give the plaintiff a bill of exchange for so much : this shall bind, though *A* become insolvent and never pay ; for the plaintiff, perhaps, would not have delayed, had it not been for the defendant's promise. *(id.)*

We admit that the doctrine of nonfeasance and misfeasance is left in a little confusion by the books, some expressions giving color to the positions advanced against us. It is said, for instance, that if one take charge of brandy, and spill a portion of it, which implies feasance, he is liable ; but if the bailee, who receives it, totally omit doing any thing whatever by which it is lost or spilled, he is not liable. The latter position is not warranted by the cases. *Coggs v. Bernard* is, that the bailee is not liable if he do nothing ; that is, if he never even receive the property. Suppose a revenue law required brandy to be deposited in a public store ; or that, otherwise, it should be forfeited—I deliver the brandy, with the documents and key, to one, for the purpose of having it stored, and he staves the pipes and wastes the brandy—it is admitted he would be liable. Suppose, again, that he receives them, and then refuses to stir, by which the brandy is forfeited to the government, by reason of not being deposited : the loss is equally serious—the consideration equally adequate—and yet shall it be said the bailor must abide the loss ? In *Elsee v. Gatward,* (5 *T. R.* 143, 148,) Ld. *Kenyon* recognized what *Powell,* J. said in *Coggs* v. *Bernard,*

that " an action will not lie for not doing a thing, for want of a sufficient consideration ; but if the bailee will take the goods into his custody, he shall be answerable for them ; for the taking of the goods into his custody is his own act." So here, the defendants take the note, which is the same as a delivery of goods, and they are liable, no matter what name you give to the omission, whether *nonfeasance* or *misfeasance.*

As to the clerical error in the first and second counts, which omit to set forth the time the notes had to run, it is true they are mentioned as bearing date on the *12th* of *August,* and as being endorsed on the *14th* of *February ;* but the time is laid under a *scilicet,* and is immaterial. There can te no intendment that the notes were endorsed an hour before they were delivered, or that they lay an unreasonable time with the plaintiffs below. The proof must have been regular, and might have proceeded in total disregard of the time, which was mere form. Beside, it does not lie with the bank to say that a presentment and notice would do us no service, after having expressly promised, upon good consideration, to perform these acts for us. Being notes payable on demand, no particular time is fixed by the law, within which these acts should be done. The time, it is admitted, must depend on circumstances, which may, in certain cases, warrant a greater delay than 6 months. All this was proper matter of proof upon the trial. (*Losee* v. *Dunkin,* 7 *John. Rep.* 70. *Furman* v. *Haskin,* 2 *Caines' Rep.* 369. *Loomis* v. *Pulver,* 9 *John. Rep.* 244. *Hendricks* v. *Judah,* 1 *id.* 319. Various circumstances would excuse a delay of strict notice. It might have been waived by the endorser. These are matters which are never spread upon the record, and cannot come fairly in question here.

The statute under which the parties proceeded is sufficiently set forth ; but if not so, the imperfection is cured by the verdict. Beside, we do not admit that acts in relation to banks are private. They are treated as public in all our judicial proceedings, where it has never been thought necessary to recite them at large. Our Courts have decided that their bills are a legal tender, unless specially objected.

to, and their charters concern the currency of the country. (*Holland's case*, 4 *Rep.* 76. ——— v. ———, 2 *Shower*, 318, *Cade* v. *Hillary et al. Lutw.* 1407, 1410. The *King* v. *Buggs, Skin.* 428, 429.) In *The People* v. *The Utica Ins. Company*, (15 *John. Rep.* 363) in answer to an information in nature of a *quo warranto*, the defendants pleaded the act incorporating them as an insurance company, not as a private but a public act ; and no exception was taken for this reason,

*S. A. Foot*, in reply. This is certainly a case of the first impression. There has been none, either in *England* or this country, where a bank has been charged under circumstances like the present. This Court are called upon to make a precedent, and I need not remark that it should be well considered. The single ground of complaint is, that the bank gave no notice to the endorser, by which the plaintiffs below sustained damage. The bank made an honest attempt to save the note, by employing an agent to give notice. Neither party are in moral default ; and the case, therefore, presents a close contest, upon a legal question, which shall sustain the loss.

It is said we are estopped to call upon this Court for its interference, because we did not interpose our objections in the Court below. We present them with the record, and the opinion of the Court. How does it appear that we did not move in arrest of judgment ? This is not to be determined by the assertion of counsel. Can it be ascertained by the printed opinion of the Court ? Suppose there should be no formal opinion, or the Court below should forbear to notice what we did object there, must we be concluded ? Is it meant that this Court cannot notice objections which that Court were pleased to think unimportant, and therefore did not mention? I see no other way, but to look at the record ; see what objections might have been made ; and consider them, at least, *prima facie*, as made. We are referred to *Colden* v. *Knickerbacker*, (2 *Cowen's Rep.* 31.) What was that case ? The defendant had allowed judgment to pass by default ; the question came up on a record of

the default ; and it was seen that he had not even placed himself in a condition to take the objections raised. The record must be the only test. The question can not be tried by affidavit. But if this be not so, and the Court should seek for the best lights they have, the opinion below, it does appear from this, that the objections upon the case related not only to the evidence, but the pleadings. Mr. Justice *Woodworth,* who gave the opinion, felt himself constrained to lay the first and second counts out of view as not reaching the case ; and to make the whole depend upon the third count. What does this mean, unless the pleadings were drawn in question ? Substantially, they were as much in question as here. The whole declaration was before the Court, who restricted the case to the third count. With leave of this Court, however, I shall consider all the questions which might have been raised in the Court below, relying upon the rule which I first advanced as the correct one.

It will not be denied that where one count is substantially defective, and the verdict is general, the judgment should be reversed. I would barely observe in relation to the first and second counts, that it is true, as contended by the other side, that the note should have been presented in a reasonable time ; and that this was matter of proof at the trial; but the declaration should have averred expressly, that afterwards, to wit, on such a day, *being within a reasonable time after the making or endorsement,* they were presented for payment, and notice of non-payment given. The counts neither contain this averment, nor set forth the circumstances to shew whether these steps were taken in a reasonable time or not. Omitting this, no loss is shown, as a consequence of the default.

As to the third count, upon which the principal question arises, I shall not stop to review the cases, and draw the distinction between nonfeasance and misfeasance, because I am sure it will be found that Mr. Justice *Woodworth* assumed the sensible ground in the Court below. In a word, nonfeasance is not doing ; misfeasance is entering upon the undertaking, doing, but doing negligently. In the first case, a consideration is necessary ; in the latter, not. In the

ALBANY,
April, 1824.

Bank of Utica
v.
Smedes.

first, the contract is merely honorary ; as to the second, if you will be kind and generous, and enter upon the act of kindness and generosity, you shall be holden to perform faithfully. If you merely say you will be so, it is a different thing. *Woodworth*, J. says, of this declaration, " the third count is the only one on which the plaintiffs can rely ; and that is for a nonfeasance, which cannot be supported, unless founded on a valid consideration." (20 *John. Rep.* 379.) To the same effect is the language of *Kent*, Ch. Justice, in *Thorn* v. *Deas*, (4 *John. Rep.* 99.) " But none of these cases," says he, " nor, as far as I can discover, do any of the *dicta* of the judges in them, go so far as to say, that an assumpsit would lie for the non-performance of a promise, without stating a consideration for the promise." *Woodworth*, J. also defines, and well defines, what shall constitute a consideration. It is either an injury to one party, or a benefit to the other ; (20 *John. Rep.* 380) that is, if the promisee be injured or the promissor benefitted. Here the single consideration is, that the plaintiffs below would endorse and deliver over the note to the defendants below for collection. Was this such a prejudice to the holders, or benefit to the bank as would make a binding consideration, and render them liable for omitting performance ? Neither the counsel, nor the Court below, pretended that this alone was sufficient ; but they put it on the ground of expectation. It was the probable, or expected benefit to the bank, arising from the course of their business, the hope that it would result in the receipt of the money due, and its temporary use ; and the Judge enters into a disquisition upon the manner of doing business in banks, to shew that the expectation was a reasonable one. But it is essential to the validity of the declaration, that not only the promise, but the consideration should be distinctly and fully set forth there. Now, the consideration mentioned, and relied on by the Court, does not appear in the third count at all. It is the act of endorsement and delivery ; not the expectation, which is averred. To conform to the opinion of the Court below, the addition should have been made, " and also in consideration of the use of the money to be received till withdrawn." The real consideration, upon which the

Court below proceeded, is a perfect nonentity here. The Court below forgot this. They forgot that they could not rely upon a consideration not made the foundation of the judgment by pleading. It may be thought that the benefit to have been derived from the use of the money was not a distinct and independent fact necessary to be averred, but that it resulted from the allegation of endorsement and delivery. A moment's reflection will shew the contrary It may be the course of the bank to keep such monies separate from the general fund ; but whether they do so or not, is a question of fact. This may or may not be their practice. It depends on their mode of doing business ; and the temporary use of the money may, or may not, result from its receipt. Again, it may be no benefit to the bank, even if it be intended that they would use it ; or the benefit may not equal the risque of receiving, paying out, exchange, &c. If not, it can constitute no legal consideration. Thus, the temporary use itself, and the benefit of that use, are both of them independent facts, which it is necessary to aver ; and it would introduce a singular laxity in pleading, to say that mere matters of proof shall be the subject of judicial intendment.

But suppose we are mistaken in saying that the consideration is not sufficiently set forth ; will an expectation of benefit, from performing the promise, constitute a consideration ? It appears to me that the case of *Elsee* v. *Gatward*, (5 *T. R.* 143) furnishes a complete answer. It can not be said that, in that case, a benefit was not equally matter of expectation from a performance by the promissor ; yet all the Judges agreed that the promise was a *nudum pactum.* This case is stronger against the action than that. There the carpenter must certainly have been paid, if he had performed the services. Here, it is not pretended that the receipt of the money would have conferred any thing more than a contingent benefit. It might or might not have resulted in an advantage to the promissors. The benefit intended by the cases, which is to form a consideration, must be a benefit either actually received, or resting in a present, legal, vested right to it. Take the case, stated on the other side,

of an attorney or counsel employed to manage a cause. The client tells his counsel, " I can not pay you ; but the cause stands high on the calendar ; and if you argue it ably, you will probably be retained in several causes which stand lower upon the same calendar." Suppose the counsel to promise upon such a consideration ; would he be bound to perform ? The case of the attorney directly retained is different. Certain fees are allowed him by the law ; on his accepting a retainer, his client incurs the legal liability to pay those fees, and he must, therefore, appear and defend or prosecute according to his engagement, or pay damages for the neglect. So of common carriers. They are allowed, by law, certain fees ; and it is enough, in complaining of nonfeasance, to allege that the defendant was a common carrier, or a common porter, and that the article was delivered by the promissee and accepted by the promissor. No other consideration is necessary, because, by the law, he may exact and enforce a reward. This is not so of the bank. It is not one of their legal duties to notify endorsers. This is the proper business of a notary publick. The bank can recover no reward, while the notary is entitled to his fees. The bank is like the carpenter, not the attorney, carrier or porter. Ld. *Kenyon* draws this very distinction in *Elsee* v. *Gatward.*

The endorsement and delivery, so far from being an injury to the plaintiffs below, was a benefit ; and so intended by the parties. The note was payable at the bank. Suppose they had refused to receive it in any shape. The *Smedes* must have been at the expense of employing some other agent to attend at the bank during the whole third day of grace. The bank relieved them from this expense by engaging a notary.

Again ; the bank of *Utica,* not being connected by any statute, which is set forth, with the bank at *Canandaigua,* the former can not be liable, unless it has assented to the latter doing business in this way for the former. All this should have been averred. The connexion between the two banks should have been exhibited upon the pleadings, either from a statute or a contract of agency. The rule is inflexible, that a

private statute must be set forth at large in pleading. (*Bac. Abr. statute,* (*F*). *Boyce* v. *Whitaker, Doug.* 97. *Dive* v. *Maningham, Plowd.* 65. *Read* v. *Potter, Cro. Jac.* 139. *Jenkins* v. *Union Turnp. Co.* 1 *Caines' Cas. Err.* 93. *Wright* v. *Paton,* 10 *John. Rep.* 300. *Holland's case,* 4 *Rep.* 76.)

It is said, however, that all our objections to this declaration are cured by the verdict. The rule upon this head is, that if a matter essential in pleading be alleged in terms too general to stand the test of a demurrer, and a certain specific fact is necessary to support it, that fact will, after verdict, be intended to have been proved at the trial; but the rule goes no farther. The law will only imply means to substantiate a general allegation. This is what it means by a title defectively set forth. Here is a defective title. Nothing either general or special is alleged. The want of averring non-payment specifically may be cured by the rule, as to the effect of the verdict, but nothing more. The law knows nothing about individual rights, gifts, or franchises. If all the effects claimed from this verdict are to be recognized, it is certainly a most sovereign remedy. It will not only supply defects in a general allegation, but make a case out of whole cloth.

It is said this act is public, because it concerns the currency of the state. But this is very indirectly and distantly. The charter is still a franchise. Suppose a statute gives a private banker certain privileges; would the act be public, because it affects the currency? There is a clause at the end of almost every bank charter, declaring it a public act. Would this be necessary, if these acts are, in their own nature, public?

THE CHANCELLOR. The principal question raised in this cause, is one which was discussed before the supreme court, and was there determined. It is, whether any sufficient consideration for the promise stated in the third count, appears from the declaration, or not. Upon this question, I concur with the supreme court in their opinion, that this count is good, considered as a count for nonfeasance. The reasons of the supreme court, in support of this opinion, are

The principal question relates to the 3d count; which is good either as a count for a nonfeasance, or misfeasance.

ALBANY,
April. 1824.

Bank of Utica
v.
Smedes.

just and conclusive. But the third count may also, I think, be as properly considered, a count for misfeasance. The truth of the transaction, even as it is stated in this count, was as much a mismanagement of the business undertaken, as it was a total neglect to perform it. The reception of the note by the bank for collection, may well be considered, as the first step in the execution of the contract, on their part, and in this view, no other consideration was necessary.

The other objections are not admissible here, because not made in the supreme court.

Upon the other objections made by the plaintiffs in error, it might be sufficient to say, that they do not appear to have been presented to the supreme court ; and that by the decis- ions and practice of this court, such objections, can not be entertained here. I will however, state my opinion, upon some of the most important of those objections.

It is urged, that there is no public law, establishing an of- fice of the bank of Utica, at Canandaigua ; and that the act of the tenth day of April 1815, authorizing this bank to es- tablish an office at Canandaigua, is a private act, which is not set forth in the declaration. The act incorporating the bank of Utica, is declared to be a public act ; and the action

The corpora- tion might con- tract, (keeping within the scope of its general pow- ers) to do an act at any place.

is against this bank. This corporation may make any con- tract within the scope of its general powers, and may bind itself to do an act at Canandaigua, or any other place ; and wherever the engagement may be broken, the bank will be equally liable. But I am not prepared to admit, that a law incorporating a bank, without declaring the law to be a pub-

It seems, a law incorpora- ting a bank is a public act.

lic statute, is a private act, which must be recited in every suit against the corporation. These institutions are public, in their nature and character ; and their operations affect the

But the act authorizing an office of dis- count, &c. is sufficiently set forth.

whole community. But without pursuing this inquiry, I am of opinion, that the act of the tenth day of April 1815, au- thorizing the bank of Utica to establish an office at Canan- daigua, is sufficiently set forth in the declaration in this cause. The declaration states, that the bank of Utica, had pursuant to the act of the legislature, passed the tenth day of April 1815, established an office of discount and deposit, in Can- andaigua. This allegation, though not a full recital of the act, must be sufficient, at least, after a verdict.

Another objection is, that the note stated in the two first counts of the declaration, appears as a note payable on demand; and that it is not alleged, that any demand of payment from the makers, was made within a reasonable time. What was a reasonable time, would depend upon all the facts of the case, as they must have appeared at the trial. The decisive answer to this objection and to some others which have been urged, is, that they are made for the first time, after the trial of the cause and a verdict by a jury. All these objections may have been made, and all these defects if they are such, may have been supplied, by sufficient proofs at the trial. The established rules of our law authorize, and justice and public convenience, require, that the power of a verdict to cure formal defects in pleading, should be liberally applied.

I am accordingly of opinion, that the judgment of the supreme court, should be affirmed.

*The Court* being unanimously of this opinion, it was, thereupon, ORDERED, ADJUDGED and DECREED, that the judgment of the Supreme Court be affirmed; and that the defendants in error, according to the statute in such case made and provided, recover their double costs for their defence of the writ of error to be taxed; and also their damages for the delay and vexation, tobe assessed; which said damages shall be calculated at and after the rate of seven *per cent.* upon the amount of the judgment in the Supreme Court, so as aforesaid rendered, from the return of the *postea* in the Supreme Court, to the day of such assessment; and that the amount of such damages and costs be inserted in the *remittitur;* and that the record be remitted, &c.

**ALBANY,**
April, 1824.

Bank of Utica.
v.
Smedes.

It was not necessary to aver, in the 1st and 2d counts, that demand of payment was made of the makers within a reasonable time. The notes being payable on demand, what is a reasonable time depended on all the facts, to be proved at the trial. The power of a verdict to cure formal defects in pleading should be liberally applied.