State Bank of Troy *v.* Bank of the Capitol.

---

THE STATE BANK OF TROY *vs.* THE BANK OF THE CAPITOL.

For the purposes of protest, a collecting agent occupies the position and is held to the obligations of a holder of commercial paper.

In the case of a bill or note, sent to a bank as agent for *collection* merely, in the absence of proof of an express contract or of commercial usage, it is not obligatory on the collecting bank to notify and duly charge *all* the prior parties to the paper, but *only* its own principal, or immediate indorser.

If the collecting bank undertakes to transmit notices of protest to other parties besides its immediate indorser, although this may be *some* evidence of an agreement to notify all the indorsers, it is not *sufficient* evidence of such an agreement, in the absence of proof of custom or usage.

MOTION for a new trial, on exceptions taken at the circuit and ordered to be heard in the first instance at the general term.

State Bank of Troy *v.* Bank of the Capitol.

*J. Romeyn,* for the plaintiff.

*Ira Shafer,* for the defendant.

*By the Court,* HOGEBOOM, J.   This action is brought by the plaintiff against the defendant to recover damages for the defendant's negligence in the protesting of a draft, sent to it for collection by the plaintiff.   The defendant was the plaintiff's collecting agent at Albany, where the draft was payable. It was drawn by Oramel Brewster on Arland Carroll, and payable to the order of W. C. Watson, and indorsed by him and by John Roth & Co. to David Dater, who was the owner thereof, and who indorsed and delivered it to the plaintiff for collection ; and the plaintiff, through its cashier, thereupon indorsed and delivered it to the defendant, a corporation located at Albany, for collection.   Payment of the draft was duly demanded but not made, and thereupon the defendant in due season sent notices of protest to the plaintiff, for itself and all the previous parties to the draft, directed to them in their proper names, except W. C. Watson, whose name was Winslow C. Watson, but who was described in the notice of protest as Wm. C. Watson.   The notices to the indorsers, received by the plaintiff from the defendant, were seasonably forwarded by the plaintiff and reached them.   That directed to Wm. C. Watson came to the hands of the indorser, W. C. Watson, at Port Kent, where he resided, and to which place the notice had been forwarded by the plaintiff.   Dater, being the owner of the draft, prosecuted some or all of the previous parties to the paper, including the acceptor ; but they were insolvent, except Watson, and Dater was defeated as to him by reason of the misdirection in the notice of protest.   Dater thereupon prosecuted the plaintiff, in whose hands he had placed the draft for collection, for negligence and improper protest of the draft as to Watson, and recovered.   That recovery embraced not only the amount of the draft and interest, but the costs both of prosecution and defense in the suit

of *Dater* v. *Watson,* which Dater had paid, and which suit Dater had given the plaintiff notice to defend. The plaintiff thereupon brought this action against the defendant, for like negligence and improper protest of the note, and having given the defendant notice of the previous suits of *Dater* v. *Watson,* and *Dater* v. *The State Bank of Troy,* during the pendency thereof, was permitted to recover, 1. The amount of the draft and interest; 2. The costs of the suit; 3. The costs both of the prosecution and defense of the suit of *Dater* v. *Watson ;* 4. The costs both of the prosecution and defense of the suit of *Dater* v. *The State Bank of Troy.*

The rulings at the circuit were, it is evident, designed to be liberal in favor of the plaintiff, to the end that if the plaintiff was entitled to recover for all or only a portion of these items, the amounts of which were readily ascertainable from the evidence, a new trial might be avoided, if possible, and the verdict properly corrected if necessary, as to amount; or if not, or the defendants were entitled to a verdict, that a single new trial would be sufficient to adjust the rights of the parties according to law. The exceptions to evidence and to the charge of the court are presented in so many various forms as to make this practicable.

To dispose of this case correctly it is of importance to see in the first place what was the precise duty and obligation of the defendant. It was the plaintiff's collecting agent at Albany and received the draft in question for the purpose of collection. Ordinarily, it is claimed on the part of the defendant, this duty is satisfied by a demand of payment, and in the event of non-payment seasonable notification of that fact to its principal. (*Edwards on Bills,* 476. *Mead* v. *Engs,* 5 *Cowen,* 303. *Bank of U. S.* v. *Davis,* 2 *Hill,* 451. *Spencer* v. *Ballou,* 18 *N. Y. Rep.* 327. *Farmers' Bank of Bridgeport* v. *Vail,* 21 *id.* 485.) It had no interest in the draft itself, and had contracted no obligation to any of the other parties to the draft. It was its duty to notify the plaintiff, without delay, of the non-payment of the draft,

in order that the plaintiff might seasonably notify the previous parties to the paper. The time allowed to the defendant for this purpose was the same that would have been allowed to the defendant had it been the actual owner and holder of the paper.

For the purposes of protest, a collecting agent occupies the position and is held to the obligations of a holder of commercial paper. (*Mead* v. *Engs*, 5 *Cowen*, 303. *Howard* v. *Ives*, 1 *Hill*, 263. *Bank of U. S.* v. *Davis*, 2 *id.* 451. *Farmers' Bank of Bridgeport* v. *Vail*, 21 *N. Y. Rep.* 487, 488. *Ogden* v. *Dobbin*, 2 *Hall*, 112.)

As the ultimate indorsee, (if it had owned the paper itself,) it would have been entirely at its option whether to give notice of protest only to its immediate indorser or to all the previous parties to the draft, or not to give any notice at all. In such event as last suggested the drawer and all the indorsers would be discharged, and the acceptor alone held on due demand of payment from him. If satisfied with the responsibility of the last indorser, a demand of payment and notice to such last indorser would have been sufficient. As collecting agent for the plaintiff its duties were somewhat different and dependent upon the express or implied contract which it had made with the plaintiff. It had made no contract with any other person.

If the contract with the plaintiff was to demand payment of the note, and notify all the parties of the non-payment, such contract must of course be fulfilled. Such a contract is sometimes made in express terms, and sometimes it is implied from custom and usage and the course of business. (*Smedes* v. *Bank of Utica*, 20 *John.* 372. 3 *Cowen*, 662. *Edwards on Bills*, 475, 476.) In such case it is of course obligatory. Whether in the case of a bill or note, sent *for collection merely*, and in the absence of an express contract as to the precise duty to be performed, the presumption of law is, that the corresponding or collecting agent will take the necessary steps to charge *all the parties* to the paper, is a question of

much embarrassment, and not I think as yet clearly settled in this state. I am inclined to think that in such case (there being no proof of express contract or usage) it is not obligatory on the corresponding bank to notify and duly charge all the prior parties to the paper.

I state this proposition as on the whole the result of the adjudications in this state, although it must be confessed that for a case so likely to occur, and to require the existence of a clear and well established rule, the cases are far from uniform. In *Mead* v. *Engs*, (5 *Cowen*, 303,) the suit was against an indorser, to whom notice of protest was sent from the next preceding indorser, after an interval of some days had occurred in transmitting subsequent indorsements, though in each case it had been sent to the next preceding indorser the day after it had been sent to his indorser. The court laid down this rule: "One to whom a bill or note is indorsed as agent to collect (e. g. a bank) is a holder for the purpose of giving and receiving notice of non-payment, and he is not bound to give notice of non-payment directly to all prior parties, but may notice his next immediate indorser, who is bound to notice his indorser, &c. in the same manner as if the bill or note had been negotiated for a valuable consideration." The defendant had offered evidence that it was the custom of New York banks which received bills or notes for collection to give notice of non-payment directly to all prior parties. This evidence was excluded, and as the supreme court held, properly, as not being material. They say: "The evidence of custom which was rejected by the judge was in no respect material." It is prudent and probably customary for the holders of bills of exchange to give notice of their dishonor to all the parties to the bill. They may not wish to run the hazard of some of the parties being discharged by the omission of such notice. But if the holder is satisfied with the responsibility of his immediate indorser, there is no necessity for his giving notice to any previous party; and if such notice is given by the

other parties to the bill, the holder may recover against any of them." (*Id. p.* 309.)

In *Howard* v. *Ives*, (1 *Hill*, 263,) and *Bank of U. S.* v. *Davis*, (2 *id.* 451,) the same general principle is recognized, that an agent holding paper for collection is a principal for the purpose of transmitting notice of protest. The head note of the latter case contains this proposition : " When a bill or note is indorsed by the holder and sent to an agent for collection, the latter need not give notice of dishonor to all the parties, but it is enough if he notify his principal, who may charge the prior parties, by giving them notice himself; and this though it appear that had the notices been sent by the agent they would have been received sooner."

Other cases in our own courts affirm the same general doctrine, and they appear on their face to state in unqualified terms that the duty of the collecting agent is discharged if he seasonably notify his own principal. But it is proper to observe that they seem to be cases where the question arose between the holder and an early indorser, and the right of recovery turned upon the point whether such indorser could be charged by consecutive notices on successive days from each indorser to his next preceding indorser ; and the question did not arise between the holder of the paper and the collecting agent to whom it had been sent for collection, where the right of recovery turned upon the nature of the contract which such agent made with his principal, whether such contract was to notify only his principal or all the previous parties to the paper. This latter question, however, arose directly in the case of *Smedes* v. *The Bank of Utica*, (20 *John.* 372 ; *S. C. in error*, 3 *Cowen*, 662.) It was an action of assumpsit against the bank, to recover damages for default in notifying all the indorsers. The general proposition is thus stated in the head note of the case : " Where a promissory note is indorsed and delivered to a bank for collection there is an implied undertaking on the part of the bank, in case the note is not paid, to give notice of the default of the maker to *all the indorsers.*" It is to be noticed, however,

that the plaintiff, in order to support his cause of action, proved that it was the uniform custom and established understanding of banks to give notice to all the indorsers. There was no contradiction of this testimony, and on the strength of it the plaintiff recovered. The court said (p. 378) that they thought they might take judicial notice of this general custom and understanding, but that at all events it was fully proved in the case. The case was affirmed in the court of errors, although there the question turned mainly on the point whether a sufficient consideration for the undertaking of the bank was alleged and proved.

In *Curtis* v. *Leavitt*, (15 *N. Y. Rep.* 167,) this matter is incidentally alluded to in the opinion of Justice Shankland, as follows : " There is another class of obligations into which these banks can enter, and which though not expressed are yet inferred as incidental to the power of receiving deposits. It is that of assuming to charge indorsers of the notes of its customers left with the bank for collection. This obligation springs out of the custom of bankers receiving such notes to collect, on the express or implied agreement that the money when collected will remain on deposit for some short time, at least, for the benefit of the bank. If the bank neglects to use due diligence to charge indorsers on commercial paper thus left with it, it is subjected to the loss. This responsibility of banks has been enforced in this state in numerous instances. (20 *John.* 372. 3 *Cowen*, 662. 11 *Wend.* 473. 22 *id.* 215. 6 *Hill*, 648.)

In *The Bank of Utica* v. *McKinster*, (11 *Wend.* 475,) the question was not discussed, but the liability in a proper case was assumed to exist. The chancellor says : " By the decision of this court in *The Bank of Utica* v. *Smedes*, (3 *Cowen*, 662,) it was settled that the bank was liable to an action for a neglect to give notice to the indorsers according to the usual course and practice of banks."

In *Montgomery Co. Bank* v. *Albany City Bank*, (3 *Seld.* 460, 461,) Judge Jewett declares it to be a rule of law well

State Bank of Troy *v.* Bank of the Capitol.

settled in this state, that a bank receiving a bill from the owner, for collection, is bound to present it for acceptance and payment, and if not paid when presented for payment it must take such steps by protest and notice as are necessary to charge the *drawer* and *indorser*, or it will be liable to its principal, the owner, for the damages which the latter sustains by any neglect to perform such duties, unless there be some agreement to the contrary, express or implied.

In the case of *Allen* v. *The Merchants' Bank of New York,* (22 *Wend.* 228,) Senator Verplanck, delivering the opinion of a majority of the court, uses this strong language : " It is well settled in this state that there is an implied undertaking by a bank or banker receiving negotiable paper deposited for collection, to take the necessary measures to charge the drawer, maker, or other proper parties, upon the default or refusal to pay or accept. (*Smedes* v. *Bank of Utica,* 20 *John.* 372 ; *and same case in this court,* 3 *Cowen,* 663. *McKinster* v. *Bank of Utica,* 9 *Wend.* 46 ; 11 *id.* 473, *S. C.*) "

These authorities on each side of this question do not, in my opinion, leave the matter free from doubt. I am inclined to think that the tendency of the latter adjudications is, in the absence of proof of any express contract or of commercial usage, to treat a mere corresponding or collecting agent as discharging its duty by a proper demand of payment and notice of non-payment to its principal. I am the more inclined to adopt this conclusion from the insignificant benefit or compensation usually received by banks for the performance of a service so responsible and important. I am not without doubt as to what the true rule of law is, but on a new trial the case may perhaps to some extent be relieved of some embarrassment by affirmative proof of an express contract, or established custom. I think, therefore, the defendant's duty would have been discharged on seasonably notifying the plaintiff of the non-payment and protest of the note.

But it undertook to do something more, and the question is whether that is evidence of its having agreed to do some-

thing more; or if not, whether the manner of doing it was such as naturally to mislead the plaintiff and to induce a course of conduct by the latter which has subjected it to pecuniary liability to others. The defendant did what it was not probably obliged to do; to wit, transmit notices of protest to other parties. This might be *some* evidence of an agreement to notify all the indorsers, but not sufficient evidence, I think, of such an agreement in the absence of proof of custom or usage.

But in sending these notices of protest, it misdescribed one of the indorsers by calling him Wm. C. Watson instead of W. C. Watson, or Winslow C. Watson, and the plaintiff doubtless relying upon the correctness of the address forwarded the identical notice sent to it. It may be claimed that the act of the defendant in misdescribing Watson, misled the plaintiff and produced all the injurious results which followed; that as the defendant had possession of the draft, and the opportunity of inspecting the signature of the indorser, and the plaintiff had not, (at the time the notice was sent,) the latter had a right to rely upon the correctness of the address thus sent; that it was in effect a representation that such was the name of Watson in fact, or as it appeared on the paper in question. It may be that there was a question for the jury on this point, but as it was not made on the trial, and does not appear to have governed the court in the disposition of the case, I think it ought not to control us upon this occasion.

It results from these observations that a new trial must be granted in this case. For, 1. If there was no express or implied contract further than is shown in this case, the only notice of protest which the defendant was obliged to give, as we on the whole are inclined to hold, was that to the plaintiff, and that was seasonably sent. On such proof the defendant and not the plaintiff would be entitled to a verdict. The notification to the defendant, of the object and pendency of the two previous suits brought by Dater, did not impose upon it the obligation to defend. Such a notice has no effect unless

there be some relation or privity between the parties in regard to the subject of the litigation.

2. As the defendant had made no contract express or implied with Dater or any of the parties to the draft except the plaintiff, it cannot be responsible to Dater or the plaintiff for his failure to recover against Watson or the plaintiff. It had not agreed with Dater to notify Watson of the non-payment of the note, and hence could not be responsible to Dater for not doing so. Hence it would not be responsible for the costs of the litigation between Dater and Watson.

3. Nor had it made any contract with the *plaintiff* to notify Watson. It was the plaintiff's own business to do so, or to notify Dater and give him an opportunity to do so. If it had made such a contract it would have been liable for the costs of both suits, as it was notified of the pendency of both and had an opportunity to conduct the one and defend the other. But as it had not made such a contract it was not liable for the costs of either litigation.

4. The foregoing suggestions are made with reference only to the proceedings as they stand in the case now considered. If the plaintiff, on a new trial, shall be able to satisfy a court and jury either, (1.) That there was an express contract to notify all the indorsers; or (2.) That there was an implied contract resulting from commercial usage or the course of business; or (3.) That the natural and necessary result of the misdirection of Watson's name in the notice of protest was to subject the plaintiff to the damages sustained by it in the litigations to which it has been subjected, then the plaintiff will be entitled to recover against the defendant for such damages. The precise amount of them, as well in regard to the items of costs as otherwise, will depend upon the circumstances developed on the trial, and may to some extent be varied by the character or degree of the proof offered.

In what has been said it has been assumed that Watson was discharged from liability by the insufficiency of the notice. This is in accordance with what is alleged to have been the

decision of this court, in regard to this very notice, in some one of these prosecutions. I do not find the case reported, nor have we been supplied with the opinion of the court. As an original question, with my present views I should have come to a different conclusion, but presuming that the court gave to the question mature deliberation and made the decision claimed, it is more appropriate, and indeed obligatory upon us, to conform to the views thus expressed.

There must be a new trial, with costs to abide the event.

