THE STATE v. THE PORT ROYAL AND AUGUSTA RY. CO.

KING v. SAME.

1. REMOVAL OF CAUSES.—To render a cause brought in a State Court removable to the Federal Courts, as arising under the Constitution, laws, or treaties of the United States, the facts making it removable must appear on the face of the complaint, and must be a question embraced in sec. 553 of 24 Stat. of U. S., or sec. 434 of 25 Stat. of U. S.

2. STATE—CITIZEN—CORPORATION.—A State is not a citizen, and a suit between a State and one of its citizens, or a corporation of another State, is not a suit between citizens of different States.

3. ABATEMENT—RAILROADS—THE ACT OF 1893 (21 Stat., 537,) did not have the effect to abate the suits then in progress for the winding up of its affairs, and the forfeiture of the charter of the Port Royal and Augusta Railway Co.   MR. CHIEF JUSTICE McIVER *dissenting*.

4. CIRCUIT JUDGE—RECEIVERS—CHAMBERS—REV. STAT., SEC. 2244. Under section 2244 of Rev. Stat., a Circuit Judge may pass an order at chambers authorizing a receiver of a railroad to issue receiver's certificates, upon notice to all parties in interest.

5. APPEAL—PARTIES—ORDER.—It is too late to object for the first time on appeal to an order made in the Circuit Court, on the ground that the necessary parties were not before the Court.

6. CONSTRUCTION OF STATUTES.—To ascertain whether an act be public or private, we must look to the objects and purposes contemplated, and the scope and powers of the act.   DICTA.

7. PLEADING—PRACTICE.—A bill of revivor cannot be filed against a defunct corporation.   DICTA.

Before ALDRICH, J., Beaufort, February, 1893.   Affirmed.

Action by the State of South Carolina against the Port Royal and Augusta Railway Company, a corporation chartered under the laws of this State, and an action by Henry B. King and David Kohn, Edward Popper, and William M. Kohn, copartners as Kohn, Popper & Co., against the Port Royal and Augusta Railway Company, a corporation created by and under the laws of the State of South Carolina, the Central Railroad and Banking Company of Georgia, a corporation created by and under the laws of the State of Georgia..

The following is so much of the Circuit decree in the first case as is necessary for a proper understanding of the questions raised here.

It is next urged by the defendants that I should stay my hand and take no further action, because of their petition and bond of removal of this cause to the United States Court. They do not assert that this hearing is before a Court competent to accept or refuse to accept such petition, and no order is asked of me by the defendants either to accept or refuse the same. But it is urged by this fact brought to my attention, I should simply stay my hand, leaving to the Court in session at Beaufort, or to the United States Court, to decide whether or not the case is properly removed. The State Courts are as much bound to recognize the Constitution and laws of the United States, and are always ready and willing to yield a cheerful and ready obedience to their mandate, as are the Courts of the United States themselves. Those questions concerning removal address themselves to the judgment of both Courts, and they approach them with the same desire to render such judgment as will give full effect to the laws of the United States. But it is as much the duty of the Judge of the State Court to examine into such alleged removal, and to determine upon his judicial responsibility, whether or not the case is a proper one for removal, as it is the duty of the Court of the United States. See *Stone* v. *S. C.,* 117 U. S., 432; *Burlington Railway* v. *Dunn,* 118 U. S., 516. Whilst it is for the Court in session at Beaufort to accept or refuse this petition, it becomes my duty, in considering the matters before me, to investigate and determine whether my jurisdiction has or has not ceased. Litigants properly before the Court are asking for protection of their rights, and judgment should be accorded them upon their application, unless, in my opinion, my jurisdiction has terminated. The grounds for removal must, therefore, be considered.

The first ground is, that by the Constitution of the State of Georgia, adopted in the year 1877, it was declared that

no corporation in the said State of Georgia should buy shares of stock in any corporation which might have the effect to lessen competition, and that it is claimed in and by aforesaid suit that the said provision and Constitution in effect abrogated and nullified the powers of the Central Railroad Company, granted to it under its charter (the petition claims that this right was granted to Central Railroad Company under its charter), and that such provision of the Constitution is null and void, in so far as it attempts to modify or take away such rights. An examination of the complaint fails to disclose any such allegations. The eighth paragraph alleges that the Central Railroad Company is a corporation under the laws of Georgia, and has no rights except those conferred upon it by its charter; that the holding of this stock is unlawful, because its charter does not authorize same. That it is also unlawful, inasmuch as such holding is prohibited by the laws of the State of Georgia, as expressed in its Constitution. There is no suggestion in the complaint, that the Constitution has impaired the obligation of any contract, or in any manner modified or abrogated the charter of the said railroad company, nor does any such question arise. It having been alleged that the said company has no power under its charter, the only reference to the Constitution is to sustain the further allegations of the complaint, that it has no authority under the general laws of the State to hold such stock.

Nowhere is it alleged that if it has authority under its charter, that the Constitution has any effect upon it. Besides this, if any such question should be made, it is one which affects the Central Railroad and Banking Company, and not the Port Royal and Augusta Railway, inasmuch as it would be an impairment of the obligation of a contract made with the Central Railroad and Banking Company, and to which the Port Royal and Augusta Railway Company is not a party. The Central Railroad and Banking Company is not a party to this action, is not bound by it, and the Port Royal and Augusta Railway Company is not directly

interested in the charter powers of the Central Railroad.
The allegation in the complaint as to the Constitution of
Georgia is not really necessary. It would have been suffi-
cient to allege that the Central Railroad was without power
to hold this stock, and have left it for the Port Royal Rail-
road to come in and justify such holding, by showing the
authority therefor. The question, then, as to the effect of
the Constitution upon the charter of the Central Railroad
and Banking Company, not only is not suggested in the
complaint, but is not involved in the determination of this
suit.

The Supreme Court of the United States, in *Gold Wash-
ing Company* v. *Keys*, 96 U. S., 203, thus states the rule:
"A case cannot be removed from a State Court simply be-
cause in the progress of the litigation it may become ne-
cessary to give a construction to the Constitution or laws
of the United States. The decision in the case must
depend upon that construction." See *Tennessee* v. *Davis*,
100 U. S., 258.

It is not pretended or claimed in the complaint that the
Constitution could have any effect in repealing, abrogating
or modifying rights conferred upon the Central Railroad
Company under its charter in 1835. The decision of the
case does not, therefore, turn upon any construction of the
Constitution, and no right of removal can, therefore, exist.
The question, if any, has been raised by the defendants
themselves, and then objected to and made a ground for
removal. In *St. Paul Railway Co.* v. *Todd Co.*, 102 U. S.,
287, the position of the State was, that the lands in ques-
tion were not rendered taxable by any law passed subse-
quent to the company's charter, but under the terms of the
charter itself. The Supreme Court held that no federal
question arose. This is the attitude of the State in this case.

It is next urged, as ground for removal, that a federal
question arises, because it is alleged that the holding of the
Port Royal stock by the Central Railroad Company is for-
bidden by the laws of the State of South Carolina; whereas

under the laws and Constitution of the United States, any corporation created under the laws of any State for the purpose of interstate commerce, may hold and acquire property, stocks, and bonds in any State, or in any corporation created by any other State. The allegations of the complaint are, that the Central Railroad cannot claim a privilege in South Carolina which it does not enjoy in the State of Georgia, which created it, and that neither the laws or public policy of South Carolina authorize or permit the holding and ownership of such bonds or stock. It is difficult to see where any federal question arises here. No case has been cited sustaining the position taken by the defendant. The only citation, *Grutcher* v. *Kentucky*, 141 U. S., 47, has reference solely to a charge of a license by the State against a citizen or corporation of another State. The Supreme Court of the United States has held that a foreign corporation has no power to exercise in a State rights granted by that State solely to corporations created by itself, and that the lease by one railroad to another, although such other railroad was authorized by the laws of its State to enter into the contract, was void, the railroad making the lease standing "in the position of alienating the powers which it had received from the State, and the duties which it owed to the public, to another corporation which it knew had no lawful capacity to exercise these powers or perform those duties." See *St. Louis R. R.* v. *Terre Haute R. R.*, 145 U. S., 408.

It is urged again, however, as a ground for removal, that at the time of commencement of this action all of the property, franchise, and assets of the Port Royal Road were in the hands and possession of the United States Court, through its receiver, and such possession being necessary for the final relief prayed in the bill in that Court, and that the relief prayed in that suit, in order to be given full effect, requires in this Court the possession and control of such property, thus making this suit in direct conflict and contravention of such prior possession and control held by the United

States Court.   It has been frequently held by the Supreme
Court of the United States, that where that Court is in the
possession of property and is disposing of the same, and con-
sidering and discharging all liens and claims thereon, that
the·possession of the *res* will draw to it the settlement of
any other claims, although set up by claimants in a different
tribunal.   And that this ancillary of defendant jurisdiction
inures to the Court, not by reason of citizenship, but be-
cause by the possession of this *res.*

This case, cited by the defendants, *Bank* against *Calhoun,*
102 U.·S., 256, is an example of this doctrine, where the
*res* being in possession of the United States Court, it was
attempted to attach it by process issuing out of the State
Court, for the purpose of determining and collecting a claim
held by the plaintiff.   The case was, by consent, removed
to the United States Court.   The Supreme Court held that
such removal was permissible, as the bank was attempting,
in the State Court, to enforce, by judicial sale, a rival and
conflicting lien to that of the parties who were proceeding
in the·Federal Court, and to sell the property under their
lien.   That the United States Court had not only obtained
jurisdiction of the question of liens prior to the suit in the
State Court, but had taken actual possession of the property,
and had thus drawn to itself the subject matter of the liti-
gation and the right to decide upon all conflicting claims.
This is not the case before the Court; here there is no ques-
tion of conflicting liens.   The State has filed this inform-
ation for the purpose of remedying an alleged misuse of the
franchise of a corporation created by it.   A receiver has
been asked for, but no effort has been made in any way to
interfere with the possession of the United States Court.
The receiver appointed has been instructed to apply to that
Court, in a respectful manner, to rescind its order appointing
a receiver, and it remains for that Court to say whether or
not it will accede to the request.   The principle decided in
Bank *v.* Calhoun, rests upon the efforts of one Court by its
powers to interfere with the actual physical possession of

property held by another Court. There is nothing to prevent different rights as to the same defendant being litigated in different tribunals; provided that there is no improper effort to interfere with the possession of the *res.*

In the case of *Wilmer* v. *Railroad*, 2 Wood, page 427, there was a question as to two suits, one pending in a State Court and the other in the United States Court, at the same time, in reference to the same railroad, the questions, however, being different, but each Court having appointed a receiver. Mr. Justice Bradley says: "If the Fulton County Court had the authority to take possession when it did so, and did not invade the possession or jurisdiction of the Court, its possession will not be interfered with by this Court; the parties must either go to that Court and pray for the removal of its hand, or, having procured an adjudication of their rights in this Court, must wait until the action of this Court has been brought to a close and judicial possession has ceased." It was not pretended that the two courts could not go on and decide the cases simultaneously. The question is fully discussed in *Watson* v. *Jones*, 13 Wallace, page 720, where there were suits pending at the same time in both the State and United States Courts, the property being in the possession of the marshal of the Chancery Court; but the United States Court held that this was no reason why the two suits should not go on in the two courts to their final conclusion, provided there was no attempt by physical force to disturb the other Court. See, also, *Buch* v. *Colbath*, 3 Wallace, 334. It is again urged that the defendant, the Port Royal Railroad Company, can claim to be a corporation under the laws of the State of Georgia, and, therefore, the case can be removed on the ground of diverse citizenship. But the Supreme Court of the United States has held in more than one case that a suit cannot be removed on the ground of diverse citizenship where a State is the party; so that there is no merit in this ground. See *Stone* v. *B. C.*, 117 U. S., 333.

Upon a careful review, therefore, the grounds set up in.

the petition for removal do not appear to be sufficient in law to remove the cause, and this being so, I cannot stay my hand, as asked, but must, in discharge of my duty, proceed to dispose of the issues before me.

The following is so much of the Circuit decree in the second case as is necessary here:

This hearing comes up under similar circumstances to that in the case of the State *v.* the Port Royal and Augusta Railway Company, the opinion and order in which case has been this day signed.    The cases are in very many respects similar, and it is not necessary to recapitulate in this order the statement of facts and legal conclusions recited in that. There are one or two points of difference only, to which attention may be briefly called.

This complaint is filed by the plaintiffs as minority stockholders of the Port Royal and Augusta Railway Company to cause their corporation to resume the exercise of its public duty to the State of South Carolina, to restrain the further misuse of its franchise by parties illegally exercising the same, and to prevent, if possible, the forfeiture of its charter by the said State.    The allegations are, in the main, similar to those contained in the complaint of the State against the Port Royal and Augusta Railway Company, but these complainants allege further that, being advised of the passage through the legislature of the joint resolution instructing the attorney general to institute those proceedings, they file this, their complaint, asking this Court, as a Court of Equity, to intervene and, by aid of its extraordinary powers, relieve the corporation from its illegal position, and thus save its charter.

The Port Royal and Augusta Railway Company makes a voluminous return, in many respects similar to that made by it in the case of the State; but it avers that the Central Railroad and Banking Company of Georgia purchased the shares of the capital stock of this defendant and its general mortgage bonds, with voting powers therein set forth, for

the purpose, *inter alia*, of preventing this defendant, the Port Royal and Augusta Railway Company, from passing into hands of competitors of the Central Railroad and Banking Company of Georgia, which could not, from their location and geographical position, have properly formed parts of a system with this defendant. The Central Railroad and Banking Company makes its return, protesting that it has not been properly served, and is, therefore, not brought within the jurisdiction of this Court. Both returns set up that petitions for removal to the United States Court have been filed; the same affidavits used in the case of the State were, by consent of both sides, reintroduced in this. The defendant introduced, also, the affidavit of the secretary of the Port Royal and Augusta Railway Company, showing that the complainant, Henry B. King, was a stockholder, holding 221 shares of its capital stock, and the complainants, Kohn, Popper & Company, were the holders of 545 of such shares. All of the grounds set up for the removal, except one, have been disposed of in the opinion in the State's case. The one referred to sets up as a ground for removal that the controversy is one between citizens of different States, and to avoid the similarity of citizenship between Henry B. King, a citizen of Georgia, and the Central Railroad and Banking Company, also a citizen of Georgia, the petition alleges that the said King is a sham and a nominal party plaintiff, brought in for the purpose only of preventing the removal of this case. No facts are alleged in the petition upon which such allegation is based. The complaint alleges that Henry B. King is a stockholder; the complaint is verified by his oath; the returns and the affidavit of the secretary of the defendant both admit the ownership of the stock by Mr. King, as claimed. The statement that he is a sham or nominal plaintiff, is practically a statement of a conclusion of law and not the statement of facts. The point raised for the removal is simply, then, a conclusion of law, whether or not the facts admitted show that he is a sham plaintiff.

The allegation is similar to allegations that the defendant has unlawfully entered or has unlawfully taken possession, which have been repeatedly held to be merely conclusions of law, and not statements of facts.    See *Railroad* v. *Tompkins*, 32 S. C., 216.    See, also, as bearing on this question, *Provident Saving Association* v. *Ford*, 114 U. S., 635; *Oakley* v. *Goodnow*, 118 U. S., 43.    In order to raise such a disputed question of fact as must be settled solely by the United States Court, the petitioner must state facts, outside of those stated therein, so as to raise an issue of fact, and not merely draw a conclusion of law from facts not denied but admitted.    See Dillon on Removal, section 158. There is nothing in the admitted facts to warrant any such conclusion as that Mr. King is a sham or nominal plaintiff; on the contrary, the intrinsic evidence of the complaint goes to show that he is an actual plaintiff in the cause. Aside from this, however, the case cannot be removed on account of diversity of citizenship, because to authorize such a removal both defendants must be citizens of a State other than the State of South Carolina.    See Dillon on Removal of Cause, page 20; Speer on Removal of Causes, page 33.    As one of the defendants is a citizen of the State of South Carolina, the case cannot be removed on the ground of diversity of citizenship.

The following is the "Information and Return" filed by the attorney general at the hearing of the first named case in this Court:

And now comes the State of South Carolina, plaintiff herein, by Hon. William A. Barber, her attorney general, and gives this honorable Court to understand and be informed:

*First.* That the attorney general is informed by Henry A. M. Smith, Esq., of Charleston, S. C., that a letter has been written by him to the said attorney general, and that the following is substantially a copy:

"Charleston, S. C., May 21, 1895.    Hon. Wm. A. Barber, Attorney General, Columbia, S. C.—Dear Sir: We beg leave respectfully to notify you that at the hearing of the appeals

in the Port Royal and Augusta Railway case, on the call of the docket for the Second Circuit, before our Supreme Court at the ensuing term, we shall present to the Court the point that those cases have ended, under the terms of the repealing act of December, 1893. Yours truly, Henry A. M. Smith." That the said attorney general has received no such letter and no other notice or papers in reference to the action so referred to in the said letter from the said Henry A. M. Smith, Esq., or from any other person or persons whomsoever, except a verbal notice from Mr. Smith personally.

*Second.* That there is reason to believe, although no formal or proper notice to that effect has been received, that the said Henry A. M. Smith, Esq., proposes to move this Court to dismiss and discontinue these appeals in this case, on some alleged ground connected with the act of the General Assembly to repeal the charter of the Port Royal and Augusta Railway Company, and to provide for a liquidation of its assets, approved January 3d, A. D. 1894.

And the State of South Carolina respectfully submits to this honorable Court, that this is a matter entirely *de hors* the record; that no such motion can be made without due notice and upon proper moving papers, and that the letter hereinbefore referred to is insufficient as such proper notice, upon which to base any such motion, and that, therefore, this honorable Court is precluded from entertaining such motion or from hearing and deciding the same.

*Third.* And the State of South Carolina gives this honorable Court further to understand and be informed, that no such motion was made in the Court below. That the papers and facts connected with all the litigation, and all the pleadings and proceedings pending here and elsewhere in reference to the said railroad, are not all of them before this Court; that the record before this honorable Court was not prepared with a view to any such motion as this, and that this Court cannot, therefore, at this stage, undertake to hear and decide any such motion, unless a record containing the proper pleadings and facts in reference thereto

had been presented to the Court, and unless proper notice and other moving papers, with proper exceptions or assignments of error, had been duly served, so that the State and her attorney general might have been properly advised as to the several positions proposed to be taken by the appellees, upon what record they propose to move, and the points upon which they propose to argue this question before this honorable Court.

*Fourth.* And the State of South Carolina gives this honorable Court further to understand and be informed that the motion, as she understands, which will be made by the said Henry A. M. Smith, Esq., is one of great importance to this litigation. That its effect will be to finally end the jurisdiction of the State Court over the Port Royal and Augusta Railway Company, and vest the same absolutely in the United States Court. That, as appears by the appeal record herein, the State filed her bill against the Port Royal and Augusta Railway Company in the Court of Common Pleas for the county of Beaufort. That immediately thereupon the defendant filed its petition and bond for removal, and claimed and alleged that the case had been removed into the United States Court. That it immediately filed the record in the United States Court; that a motion to remand was refused, and that the United States Court claimed the possession of the road and the case, and is exercising jurisdiction therein.

That, meantime, as also appears by the appeal record herein, the matter coming before the Circuit Judge of this State, he declined to accept the removal petition and bond, and insisted that the State Court had not lost jurisdiction of the case or the *res*, and still holds and maintains possession of the said road, through the receiver originally appointed in said State Court, and is exercising jurisdiction therein. That this disputed question of jurisdiction is, and has been up to this time, the main point in the present appeal.

*Fifth.* That recently the Supreme Court of the United

States has decided that only the allegations of the plaintiff's complaint can be examined into upon a motion to remove. That, as the State verily believes, the effect of such decisions will be to entirely do away with the grounds upon which such removal was sought, justify the action of the Circuit Judge of this State, and result in the release of the property by the United States Court, and the remand of the cases by the United States Court to the State Court. That these cases having been the first filed, and the first under which the present receiver was first appointed, such remand will result in leaving in the State Court the undisputed possession of the railroad property, to be administered by the State Court, under the laws and in accordance with the practice of the State Court.

*Sixth.* That, as the State is further informed and believes, the defendant is aware of this condition of the law. That the record shows its evident desire to avoid the jurisdiction of the State Court. That defendant now asks this honorable Court to declare this case, and also the case of Henry B. King *et al.* against the Port Royal and Augusta Railway Company *et al.*, dismissed, and marked discontinued and ended, on the ground that the charter of the Port Royal and Augusta Railway Company has been repealed by the act aforesaid. That if this is done, it will be contended that the receivership created thereunder will also be ended, and the Port Royal Railroad will remain absolutely in the possession and under the jurisdiction of the United States Court, by virtue of proceedings commenced and now pending in that Court, long subsequent to the beginning of this suit and the suit of Henry B. King *et al.* against the Port Royal and Augusta Railway Company *et al.*, and the original appointment of the receiver therein. That the effect, therefore, which will be claimed as resulting from the granting of this motion will be to oust the State Court of its jurisdiction, and to vest such jurisdiction permanently in the United States Circuit Court, thus reach-

ing the same end and the same result as if the case had been properly removed into the United States Court.

*Seventh.* And the State of South Carolina hereby further gives this Court to understand, and be informed, that, while the defendant, through Mr. Henry A. M. Smith, is now asking this Court to mark the said case ended and dismissed, on the alleged ground that the charter, having been repealed by the act of 1894, aforesaid, this case can no longer be continued; that it has, in other cases pending in this Court, and in the United States Circuit Court, taken the position which it still maintains, that the charter of the Port Royal and Augusta Railway Company is not subject to the act of 1841, and is not, therefore, subject to the control of the State, or to be either repealed, amended or altered, at the will of the legislature of this State. That, so soon as the record of this case was filed in the United States Court, the defendant, claiming that the same was duly removed, filed its cross bill against the State of South Carolina, bringing this defense to the attention of the Court, and asking that the Court should declare that the charter of the Port Royal Railroad was in no way subject to the control of the State or the action of the legislature. That the State, by her attorney general, moved to dismiss the said cross bill, on the ground that it was, in effect, a suit against the State, to which the State was not liable, without her consent; but that the United States Court overruled such motion, and that the said cross bill is now pending in the United States Court, no action or adjudication having been taken thereon. And the State annexes hereto, as a part of this information and return, a copy of the said cross bill, which is marked exhibit "A," and to which reference is hereby craved.

*Eighth.* And the State of South Carolina gives this Court further to understand and be informed, that in accordance with the provisions of the act of 1894, hereinbefore referred to, the State, through her attorney general, did file a complaint, in the nature of a supplemental complaint, to this

case then pending, and now in this Court on appeal, in which reference is made to these proceedings, the act of 1894 is recited as matter occurring since the inception of this action, a sale of the property of the said Port Royal and Augusta Railroad Company, and the distribution of the proceeds thereof, under and in accordance with the terms of the said act, is sought. That this complaint is filed as a supplemental complaint to the original complaint herein, and that the relief sought is in accordance with the terms of the said act. That no order could be taken in this present case consolidating said actions, or making such new action supplemental or additional, because this case, being under appeal to this honorable Court, was removed from the jurisdiction of the Circuit Court, and, therefore, no such order could be taken therein. That the act of 1894 being but a continuation of the previous legislation on the subject of the Port Royal and Augusta Railroad, this additional complaint was necessarily supplemental to the original complaint. It referred to the former proceedings instituted by the State, and now pending on appeal in this Court, sets out the fact of the subsequent legislation, and asks as a continuation and part of the relief, set out in the original complaint, that the property be sold and the proceeds be distributed under and in accordance with the terms of the said act. That to this proceeding the Port Royal Railroad Company, the Central Railroad and Banking Company, and all other necessary parties were made parties defendant. That this cause is now at issue in the Court of Common Pleas for Beaufort County, having been remanded by the United States Court to the State Court, in view of the recent decisions of the Supreme Court above referred to. That the Port Royal Railroad Company, the Central Railroad and Banking Company of Georgia, H. M. Comer, trustee, and the Union Trust Company of New York, defendants therein, have all filed answers in the said proceeding, wherein they allege: 1. That the charter of the Port Royal and Augusta Railroad Company *is not and can not*

*be affected by this act of 1894;* because, as they say, and for the reasons above referred to, the charter of the Port Royal and Augasta Railway Company is not subject to the control of the State nor to the action of the legislature. 2. Because they allege that this act of 1894 was not approved by the governor of this State in proper time, and in accordance with the provisions of the Constitution of this State. That the same is, therefore, void and of no effect, and that there is really no such act in existence as the act of 1894. 3. That the said act of 1894, even if the same shall be found to have been duly and properly passed and approved, and, therefore, being law, that the same is unconstitutional and in violation of the provisions of the Constitution of this State and of the United States, and is, therefore, void, of none effect, and must be so adjudged. And the State annexes hereto, as part of this information and return, certified copies of the joint and several answers of the defendants, the Port Royal and Augusta Railway Company, the Central Railroad and Banking Company of Georgia, and H. M. Comer, trustee, and also certified copy of the answer of the Union Trust Company of New York, all defendants to the said suit of the State, marked exhibits two and three. And the State respectfully craves attention to the said answers, and to the defenses therein set forth, alleging the invalidity of the said act, the facts that the charter of the Port Royal Railroad is irrepealable, and that the said ·act is unconstitutional. That references will be held forthwith in this case under the order of the Circuit Court, in which, perhaps, the leading issues to be decided will be whether this act of 1894 is a valid and constitutional act, and can affect the charter of the defendant.

*Ninth.* And the State of South Carolina, therefore, gives this honorable Court further to understand and be informed that, whilst this motion is made in this Court, based upon the assumption that the said act is, in every respect, valid, that the defendant, in whose behalf such motion is made, and the other defendants acting with it, some of whom are

not represented on the record by Henry A. M. Smith, Esq., are thus upon the record in other cases in this and other jurisdictions, denying that the said act of the legislature is an act, or that it can have any effect whatsoever upon the charter of the defendant, the Port Royal and Augusta Railway Company. That there is also pending in the United States Court a bill, filed by one R. M. Ogden, a bondholder of the Port Royal Railway Company, to enforce the provisions of the said act of 1894. That this cause is at issue, and in it the defendants above named have filed their several answers, attacking the validity of the said act of 1894, and setting up the claim that the charter of the said Port Royal and Augusta Railway Company is not subject to repeal, upon the same grounds as are set forth in the answers filed as exhibits hereto. That testimony has been nearly all taken in this case, and that, when it is tried, these issues as to the validity and constitutionality of the said act of 1894 will be the prominent issues in the case. And the State, therefore, respectfully submits that, if any such motion as this is granted, that the effect will be that, these cases being dismissed, the property and the litigation will be thereby practically but effectually removed into the United States Circuit Court, whilst the defendant and those acting with it will be at liberty to urge in the other cases above referred to and in other Courts, their defenses against this act of 1894 as being a void act, and not capable of affecting in any way the charter of the Port Royal and Augusta Railway Company.

*Tenth.* And the State of South Carolina further gives this Court to understand and be informed, that the State, of course, maintains the validity of her act in its entirety, but she further submits that the said act cannot be severed, and be declared constitutional in part and unconstitutional in part. That it must stand or fall together. That this honorable Court is really asked now upon this hearing, and in this informal manner, to enter into the consideration of the constitutionality of this act as a whole, and to decide

whether the act is or is not constitutional as a whole, or whether this act is of such character that it can be divided, and one portion of the act held good, whilst another part is held invalid. That neither H. M. Comer nor the Union Trust Company, who have raised and filed their objections to this act of 1894, are before the Court, nor in any way parties to these proceedings. And the State respectfully submits, that unless this honorable Court is prepared to enter into a full consideration and discussion of these matters, and is prepared to consider whether the act can be divided, and whether or not it is constitutional, that it cannot undertake to entertain or act upon this motion, even if it were made upon proper moving papers. That whether or not the act can be divided is a judicial question, requiring arguments and the judgment of the Court. That there is no record before this Court upon which it can properly act, and that this Court cannot, upon the mere motion of counsel, decide that a portion of the act is good, whilst the rest of the act may or may not be hereafter declared constitutional or unconstitutional. That, in order to entertain this motion, this honorable Court must be prepared to hold and decide that the said act of 1894 is either constitutional or unconstitutional in whole or in part, and base its action upon such a decision, but this cannot be done except upon a case properly made, issues framed, testimony had, and an appeal regularly taken to this Court.

Wherefore the State respectfully submits that no such motion can be entertained, but that the same must be refused. WM. A. BARBER,

June 3d, 1895. *Attorney General of S. C.*

State of South Carolina, Richland County. Before me personally appeared William A. Barber, who, being duly sworn, says that he is the attorney general of the State of South Carolina; that he has read the foregoing return and information, filed on behalf of the State herein, and that the facts therein stated are true. Wm. A. Barber. Sworn

to before me, this 3d day of June, A. D. 1895.    D. H. Means,
(L. S.) Notary Public.

From these orders, and one authorizing the receiver to
issue receiver's certificates, the defendants appeal.

*Messrs. Mitchell & Smith,* for appellants.

*Hon. D. A. Townsend,* attorney general, *Messrs. Smythe
& Lee, W. J. Verdier,* and *Alex. C. King,* contra.

Nov. 23, 1895.  The opinion of the Court was delivered by
MR. JUSTICE GARY.    This is the third appeal in the
above entitled cases, heard at the last term of this Court,
and is from an order of his Honor, Judge Aldrich, made at
chambers on the 3d day of February, 1894, allowing the
receiver to issue $50,000 of receiver's certificates, which
were made by said order a first lien on all the property and
assets of the Port Royal and Augusta Railway Company.
A copy of the order which was afterwards granted by his
Honor, Judge Aldrich, and from which the defendants have.
appealed to this Court, was served upon the attorneys of
the respective parties to the above entitled actions, when
the notice of motion for said order was served upon them..
His Honor, Judge Aldrich, precedes said order with the
following statement: "On reading and filing the petition of
John H. Averill, receiver of the Port Royal and Augusta
Railway Company, and it appearing to the Court that a
copy of this order has been served upon the counsel for the
several parties to the above entitled actions, it is ordered,
adjudged and decreed," etc.

First exception: The first exception complains of error
on the part of the Circuit Judge in not holding "that the
cause had been removed to the United States Circuit Court,
and that the Court of Common Pleas for Beaufort County,
nor any Judge thereof, had any further jurisdiction
to make any order therein."    All the grounds, except
that of diverse citizenship, for removal of these causes

into the Circuit Court of the United States, are presented by the petition for removal and not by the complaint. The questions presented by this exception have, therefore, under the recent rulings of the United States Supreme Court, been made more easy of solution. The reasons for the change in the rulings by that Court are stated by Mr. Justice Gray in the case of *Tennessee* v. *Union & Planters' Bank*, 14 Sup. Ct., 654, as follows: "Even under the act of 1875, the jurisdiction of the Circuit Court of the United States could not be sustained over a suit originally brought in that Court, upon the ground that the suit was one arising under the Constitution, laws or treaties of the United States, unless that appeared in the plaintiff's statement of his own claim. * * * The same rule applies more comprehensively to the acts of 1887 and 1888. In section 1, as thereby amended, the words giving original cognizance to the Circuit Courts of the United States in this class of cases are the same as in the act of 1875 (except that the jurisdictional amount is fixed at $2,000), and it is, therefore, essential to their jurisdiction, that the plaintiff's declaration, or bill, should show that he asserts a right under the Constitution or laws of the United States. But the corresponding clause in section 2 allows removal from a State Court to be made only by defendants, and of suits 'of which the Circuit Courts of the United States are given original jurisdiction by the preceding section;' thus limiting the jurisdiction of a Circuit Court of the United States on removal by the defendant, under this section, to such suits as might have been brought in that Court by the plaintiff under the first section—24 Stat., 553; 25 Stat., 434. The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this Court to contract the jurisdiction of the Circuit Courts of the United States. *Smith* v. *Lyon*, 133 U. S., 315–320, 10 Sup. Ct., 303; *In re Pennsylvania Co.*, 137 U. S., 451–454, 11 Sup. Ct., 141; *Fisk* v. *Henarie*, 142 U. S., 459–467, 12 Sup. Ct., 207; *Shaw* v. *Mining Co.*, 145 U. S., 444–449, 12 Sup. Ct., 935; *Gerling*

v. *Railroad Co.*, 151 U. S., 673–687, 14 Sup. Ct., 533." The rule now prevailing is thus stated by Mr. Justice Gray, in *Chappell* v. *Waterworth*, 15 Sup. Ct., 34: "The question of removal is governed by the decision of this Court at last term in *Tennessee* v. *Bank of Commerce*, 152 U. S., 454, 14 Sup. Ct., 654, by which, upon full consideration, it was adjudged that under the acts of March 3, 1887, c. 373 (24 Stat., 552), and August 13, 1888, c. 866 (25 Stat., 433), a case (not depending on the citizenship of the parties nor otherwise specially provided for) cannot be removed from a State Court into a Circuit Court of the United States unless that appears by the plaintiff's statement of his own claim, and that if it does not so appear, the want cannot be supplied by any statement in the petition for removal or in the subsequent pleadings." This principle was affirmed in the cases of *Postal Tel. Cable Co.* v. *Alabama*, 15 Sup. Ct., 192, and *Land Co.* v. *Brown, Id.*, 357. In addition to the authorities cited by his Honor, Judge Aldrich, to support his conclusion in the case of the State of South Carolina against the Port Royal and Augusta Railway Company, that the case should not be removed, on the ground of diverse citizenship, to the Circuit Court of the United States, we quote the following from the case of *Postal Tel. Cable Co.* v. *Alabama*, 155 U. S., 487, 15 Sup. Ct., 192: "The grounds upon which the present suit was removed from a Court of the State of Alabama into the Circuit Court of the United States were that the controversy therein arose under the Constitution and laws of the United States, and that it was wholly between citizens of different States. But the suit was one brought by the State to recover taxes and penalties imposed by its own laws, the jurisdiction over which belongs to its own tribunals, except so far as Congress, in order to secure the supremacy of the national Constitution and laws, has provided for a removal into the Courts of the United States. *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S., 265–290; *Huntington* v. *Attrill*, 146 U. S., 657–672. And the complaint by which the suit was begun did not mention the

Constitution or any law of the United States, or claim any right under either. A State is not a citizen, and, under the judiciary acts of the United States, it is well settled that a suit between a State and a citizen or corporation of another State is not between citizens of different States; and that the Circuit Court of the United States has no jurisdiction of it unless it arises under the Constitution, laws or treaties of the United States. *Ames* v. *Kansas*, 111 U. S., 440; *Stone* v. *South Carolina*, 117 U. S., 430; *Germania Ins. Co.* v. *Wisconsin*, 119 U. S., 473." The reasoning and authority cited by the Circuit Judge in the other case herein mentioned, to wit: Henry B. King *et al. v.* the Port Royal and Augusta Railway Co. *et al.*, sustained his conclusion also, that said case should not be removed to the Circuit Court of the United States on the ground of diverse citizenship. So much of the decrees of his Honor, Judge Aldrich, in the above stated cases as relates to the question of removal to the Circuit Courts of the United States, should be set out in the report of these cases. The first exception is overruled.

The attention of the Court has been called to the act of the legislature, approved the 3d of January, 1894, entitled "An act to repeal the charter of the Port Royal and Augusta Railway Company, and to provide for liquidating the said corporation and for a distribution of its assets, and to regulate the formation of a new corporation and the management thereof by any purchasers of the same." Acts 1893, p. 537. And it is contended by appellants that the said cases were abated by said act. Waiving all objection as to the right of this Court to pass upon said question at this time, and in the manner in which it is presented, it cannot be sustained. It is true, that section 1 provides for a repeal of the charter and a dissolution of the corporation. There are, however, other provisions in the act. Section 2 is as follows: "That the attorney general of this State be, and is hereby, directed and instructed to institute forthwith proper proceedings to liquidate the said corporation, to restrain it or its stockholders or creditors, or any or either of

them, from in any way asserting or exercising, or attempting to assert or exercise, any rights, privileges or franchises as a corporation; to have a receiver appointed of all the property and assets of the said corporation; to have its accounts duly taken and audited; to have its said property and assets sold, and distribution of the proceeds thereof made among its several creditors and stockholders in accordance with law." Section 5 of said act is as follows: "Nothing in this act contained shall prevent the running and operation of the said railroad, with all the privileges and franchises named in the said charter, until such time as such railroad shall be sold under any judicial proceedings, and delivery made to the purchaser thereof." The objection interposed by the appellants is both against the letter and spirit of the act, and cannot be sustained. The legislature must be presumed to have known that the railroad was in the hands of a receiver, and was being run and operated by him; furthermore, that there would necessarily be a lapse of time before the proceedings mentioned in said act could be instituted, and a receiver appointed under such proceedings to take possession of the railroad, and that the question between the State Court and the United States Circuit Court would probably prolong this interval for a considerable length of time. It was, however, provided that nothing in the act should prevent the running and operation of the said railroad, with all the privileges and franchises named in its charter. An abatement of the actions herein before the receiver mentioned in said act could be appointed and get possession of the *res*, would have prevented the running and operation of the said railroad, contrary to the very words of the act; for if, when the charter was repealed and the corporation dissolved, the actions abated in which the receiver was appointed who was running and operating the railroad, then there was no longer any authority competent, in law, to run and operate said railroad. This case is much stronger than the case of *Pomeroy* v. *Bank*, 1 Wall., 23, in which a similar objection was

interposed. In that case the Court says: "In this case, H. W. Chase, Esq., signing himself as attorney for the State Bank, in the Circuit Court for the district of Indiana, asks this Court for the abatement of the writ, upon the following suggestions: That since the trial of the above entitled cause in the Circuit Court for the district of Indiana, and before the prosecution of the writ of error in this behalf, to wit: on the 1st day of January, 1859, the said State Bank, the defendant in error in said cause, being a corporation created and organized in the State of Indiana, by the authority of an act of the legislature, has dissolved and ceased to exist as such corporation, by reason of the expiration of the charter granted to the said State Bank of Indiana. I am instructed by the Court to announce it to be its opinion, that there can be no abatement of the case upon the counsel's suggestion, as it is declared in the charter of the bank that though its charter should continue as such until the 1st day of January, 1859, and that all its banking powers should cease after the 1st day of January, 1857, that it should have all the necessary and incidental powers to collect and close up its business, within which we deem the rights of the plaintiff in this Court to be comprehended."

Second exception: The second exception complains of error on the part of the Circuit Judge in not holding "that it was not within the power of his Honor, Judge Aldrich, to grant such an order at chambers." Section 2244 of the Revised Statutes provides that: "The Circuit Court shall be deemed always open for the purpose of issuing and returning mesne and final process and commissions, and for making and directing all interlocutory orders, rules, and other proceedings whatever, preparatory to the hearing of all causes therein upon their merits; and it shall be competent for any Judge of the said Courts, upon reasonable notice to the parties, in the clerk's office or at chambers, and in vacation as well as in term, to make, direct, and award all such process, commissions, and interlocutory orders, rules, and other proceedings, whenever the same are

not grantable, of course, according to the rules and practice of the Court." This section conferred upon the Circuit Judge ample authority to grant such order. This exception is, therefore, overruled.

Third exception: The third exception complains of error on the part of the Circuit Judge in not holding "that the order made was erroneous, in that it undertook to authorize the issuing of receiver's certificates, to be first lien on the property, when the mortgagees of the existing mortgages on the property were in no wise parties to the proceedings." This exception can have no application to the parties to the aforesaid actions, because they were made parties to the proceedings by service of notice of the motion of the order granted by his Honor, Judge Aldrich. Section 143 of the Code provides that "the Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others; but when a complete determination of the controversy cannot be had without the presence of other parties, the Court must cause them to be brought in." If the appellants supposed that it was necessary that others should be made parties to the proceedings, then they should have taken the proper steps to have such persons made parties. *Eakin* v. *Knox*, 6 S. C., 14. Having failed to take the necessary steps to have such persons made parties, the appellants cannot now raise the objection that certain mortgagees should have been made parties to the proceedings. In the absence of those mortgagees who are not parties to these actions, this Court will certainly not undertake to decide what effect the order aforesaid may have on their rights. The order having been made upon notice of the motion therefor, it is binding upon the parties to these actions, and, therefore, this exception is overruled.

Fourth exception: The fourth exception complains of error on the part of the Circuit Judge in not holding "that an order of this kind cannot be made upon the *ex parte* statement of the receiver, but there must first be a refer-

ence and the taking of testimony, due notice being given of the same to all parties, before the order can be made." This exception seems to have been taken under a misapprehension of the facts, as the order of his Honor, Judge Aldrich, shows that a copy of the order, which was attached to the notice of motion, was served upon the attorneys of the respective parties to said actions. This exception is overruled.

It is the judgment of this Court, that the order of the Circuit Judge be affirmed.

MR. JUSTICE POPE. In regard to the two appeals now under consideration, I may remark that none of us have had any trouble in reaching a conclusion on the questions relating to the removal of the two actions from the Court of Common Pleas for Beaufort County, in this State, to the Circuit Court of the United States for the district of South Carolina, especially since the recent decisions of the Supreme Court of the United States on that subject, which recent decisions are referred to in the leading opinion herein of Mr. Justice Gary. There is now no shadow of excuse for such removals. But this Court has been greatly perplexed in determining its duty, now that counsel for appellants have called our attention to an act of our General Assembly, approved in January, 1894, by which the charter of the Port Royal and Augusta Railway Company was repealed. It is in reference to this question that I have felt it to be my duty to express my views. The act in question is referred to, as to its title and scope, in the opinions of both Mr. Justice Gary and Mr. Chief Justice McIver, and, therefore, need not be set out by me, and presents two phases: First, a bald repeal of the charter of the Port Royal and Augnsta Railway Company, the appellant in these cases now on appeal; second, provisions in the body of the act postponing the repeal of said charter until the accomplishment of an event in the future, which event has not yet occurred. The Chief Justice, in his opinion,

maintains that the act of 1894 has repealed the charter of the appellant railway company, and that such repeal operated at once after the passage of the act, and that the provisions in the act did not authorize a continuance of these suits. Mr. Justice Gary, however, in his opinion, maintains that, while the act in question does provide for revoking the charter of appellant railway, yet that such charter is not to be revoked until the happening of an event in the future, and cites sections 2 and 5 of said act in support of his proposition, and that the provisions of the act will enable these suits to be retained. I desire to say that, if the act of 1894 did operate to revoke the charter of appellant at once after its passage, I could not agree to do more, under the facts brought to the attention of this Court by the counsel for appellant and respondent, respectively, than to suspend the hearing of the appeal; for it is shown by the statement of such counsel that the appellant, while calling our attention to this act of 1894, maintains by its solemn answer *in a proceeding now pending* that such alleged act is unconstitutional, and, therefore, null and void. I know and acknowledge that when an appeal is pending in this Court, and it is here made to appear that any decision we may render will be of no practical value to the parties to such appeal, it is the duty of the Court to stay its hand and dismiss the appeal. For instance, if one is charged with a crime, and, after conviction, appeals to this Court, and then dies, the Court will go no further with the hearing of such appeal. Or, in further illustration, if a man is adjudged to pay a specific sum of money or to perform a specific act, and thereafter appeals to this Court from such judgment, seeking to set it aside, if it is brought to the attention of this Court that the person adjudged to pay the money or perform some specific act *has actually paid the money or performed the act, as required by the judgment of the court* from which the appeal is entered, we would dismiss the appeal. Why would we do so? Because, in the first instance, it is an *absolute verity* that the appellant

had departed this life before his appeal could be heard. Because, in the second instance, the appellant had paid the money or performed the act required by the judgment appealed from, as an *absolute verity*. But suppose, in the first instance, it was a disputed matter whether the appellant was dead, or, in the second instance, it was a disputed matter whether or not the money was paid or the act performed as required by the judgment appealed from, and the appellant's attorneys sought an order from this Court dismissing the appeal, because he alleged the appellant was dead, or had paid the money, or had performed the act as required by the judgment appealed from, this Court would not grant the order dismissing the appeal. Why? Because in neither case supposed could this Court say the statement was an *absolute verity*. Courts are not created to treat suits except as solemn realities. So, in the appeal before us, although the appellant cites the statute which purports to annul the charter of the appellant railroad, yet the same appellant, in its solemn answer in a suit between itself and the State of South Carolina, asserts that such an act is a nullity. Suppose the final judgment should decide that the act of 1894 is a nullity, after our attention had been called to such a contention, and we should dismiss this appeal, relying on that act as our authority for so doing; would we not involve this Court in a dilemma? Such, in brief, are my difficulties in acting at this time upon the suggestion that the act of 1894 should be used as the basis for an order dismissing this appeal. My conclusion would be, under these circumstances, to retain the appeal, but suspend its hearing for the present. But I am not left to hold to this view, because I agree with Mr. Justice Gary in his views, that the General Assembly of this State, in the provisions of this act of 1894, have, in effect, postponed and annulled the charter, certainly so far as these two actions are concerned. It is admitted on all hands that the General Assembly of this State could have, by annexing a clause to the act wherein the right to maintain these actions was

concerned, preserved these appeals. If the provisions of the act itself, in the absence of the clause expressly authorizing the maintenance of these actions, clearly show that the General Assembly intended, by the language embodied in the act, that these suits should be still retained, such intention is clearly legal, and should be enforced. I therefore concur in the judgment announced by Mr. Justice Gary.

MR. CHIEF JUSTICE MCIVER. These two cases, though not identical in form or in parties, practically are designed to effect the same general objects, and were, therefore, heard and will be considered together. Without undertaking to go into anything like a detailed statement of the pleadings, it will be sufficient to state, in general terms, that, in the first named case, it is alleged that the Georgia Central Railroad and Banking Company, holding a charter under the laws of the State of Georgia, has illegally acquired the control of the voting power of the Port Royal and Augusta Railway Company, and is using the power thus acquired to the great detriment of the last named corporation and its stockholders, entirely perverting its franchises from the purposes for which such corporation was created, and threatening the entire destruction of the interests of its stockholders; and the prayer, substantially, is, that this illegal control of the Port Royal and Augusta Railway Company by the Georgia Central Railroad Company may be put an end to, or that the charter of the Port Royal and Augusta Railway Company may be forfeited. In the second case above stated, which is brought by the plaintiffs as stockholders of the Port Royal and Augusta Railway Company, on behalf of themselves and all other stockholders of said last named company who may become parties and contribute to the expenses of the action, similar allegations are made as to the illegal domination and control of the Port Royal and Augusta Railway Company by the Georgia Central Railroad and Banking Company, with the further allegations that the last named company is indebted to the Port

34—45

Royal and Augusta Railway Company in a very large sum of money, for earnings and profits taken from the said Port Royal and Augusta Railway Company, and for business diverted from it, and for the property of the said Port Royal and Augusta Railway Company taken and carried away and not accounted for; and that the further allegation that the manner in which the Georgia Central Railroad and Banking Company has exercised its illegally acquired control over the Port Royal and Augusta Railway Company, will certainly bring about the forfeiture of the charter of the last named company—a result which will be destructive of the interests of the stockholders of said company. In the second case, the prayer of the complaint is for the appointment of a receiver of the railroad, and all other property and assets of the Port Royal and Augusta Railway Company, with full power to operate the said railroad; that the Georgia Central Railroad may be enjoined from undertaking to operate the Port Royal and Augusta Railway, and from interfering with any of its property or assets, as well as from participating in any meeting of the stockholders of the Port Royal and Augusta Railway Company; that an accounting be had between the said Port Royal and Augusta Railway Company and the Central Railroad and Banking Company of Georgia for all money and property illegally taken by the latter from the former company, as well as of the earnings diverted from the Port Royal and Augusta Railway Company by the Georgia Central Railroad and Banking Company, and for such other and further relief as may be proper. In due time a petition and bond were filed by the defendants, claiming that these causes should be removed to the Circuit Court of the United States, upon the ground that a federal question was involved; and his Honor, Judge Aldrich, subsequently granted an order denying the right of removal. In the meantime, a rule was granted by the same Judge, requiring the defendants to show cause why the injunction previously granted should not be continued, and the temporary appointment of a receiver made perma-

nent. Upon hearing the return of this rule, his Honor, Judge Aldrich, granted an order continuing the injunction until the final hearing of the causes, making the appointment of the receiver permanent, and directing said receiver to continue his respectful application to the United States Circuit Court for the district of South Carolina for the possession of the said property. Judge Aldrich also made an order overruling a demurrer to the complaints. From these several orders the defendants gave due notice of appeal, and both cases were docketed for hearing at November term, 1893, of this Court, which hearing, for causes unnecessary to state, was continued until the present term.

When the cases were called for hearing at the present term, counsel for appellants, without moving to dismiss these appeals, and, on the contrary, expressly averring that they made no such motion, brought to the attention of the Court the fact that since these appeals were taken and perfected the legislature of this State had passed an act entitled "An act to repeal the charter of the Port Royal and Augusta Railway Company, and to provide for liquidating the said corporation and for a distribution of its assets, and to regulate the formation of a new corporation, and the management thereof by any purchasers of the same," approved by the governor January 3, 1894; and claimed that, by virtue of that act, these cases were ended, and that there was no practical question which this Court could or should decide. Thereupon the attorney general presented to the Court a paper styled "Information and Return of the State of South Carolina," which is too long for insertion here, but which should be incorporated in the report of this case. It is sufficient to state here that, after several formal objections to the mode by which the passage of the act above referred to has been brought to the attention of the Court, which objections will hereafter be considered, and after bringing to the attention of the Court the effects which will flow from the granting of the *motion* (as it is incorrectly termed) submitted by counsel for appellants, it pro-

ceeds to bring to the attention of the Court certain facts which may be substantially stated as follows: 1st. "That, in accordance with the provisions of the act of 1894, hereiᴛ before referred to, the State, through her attorney general did file a complaint, in the nature of a supplemental complaint, in this case, then pending, and now in this Court on appeal, in which reference is made to these proceedings; the act of 1894 is recited as matter occurring since the inception of this action; a sale of the property of the said Port Royal and Augusta Railway Company, and the distribution of the proceeds thereof, under and in accordance with the terms of said act, are sought. That this complaint is filed as a supplemental complaint to the original complaint herein, and tnat the relief sought is in accordance with the terms of the said act. That no order could be taken in this present case consolidating said actions or making such new action supplemental or additional, because this case, being under appeal to this honorable Court, was removed from the jurisdiction of the Circuit Court, and, therefore, no such order could be taken therein. That, the act of 1894 being but a continuation of the previous legislation upon the subject of the Port Royal and Augusta Railroad, this additional complaint was necessarily supplemental to the original complaint. It referred to the former proceedings instituted by the State, and now pending on appeal in this Court, sets out the fact of the subsequent legislation, and asks, as a continuation and part of the relief set out in the original complaint, that the property be sold, and the proceeds be distributed under and in accordance with the terms of the said act. That to this proceeding the Port Royal Railway Company, the Central Railroad and Banking Company, and all other necessary parties were made parties defendant. That this cause is now at issue in the Court of Common Pleas for Beaufort County, having been remanded by the United States Court to the State Court, in view of the recent decisions of the Supreme Court above referred to. That the Port Royal and Au-

gusta Railroad Company, the Central Railroad and Banking Company of Georgia, H. M. Comer, trustee, and the Union Trust Company of New York, defendants therein, have all filed answers in the said proceedings," wherein they assail the validity of the act of 1894 upon various grounds, to wit: (1.) Because the charter of the Port Royal and Augusta Railway Company is an irrepealable charter. (2.) Because the said act was not approved by the governor within the time prescribed by law, and, therefore, is not an act. (3.) Because, even if the said act was approved in due time, the same is unconstitutional and void, because it purports to impair the obligation of a contract. The second fact stated in the paper styled "Information and Return of the State," is that there is another action pending in the United States Circuit Court, brought by one R. M. Ogden, as a bondholder of the Port Royal and Augusta Railway Company, to enforce the provisions of the said act of 1894, in which case, also, the above named defendants assail the validity of the act of 1894 upon the ground above stated. It is further stated in that paper, "that the State, of course, maintains the validity of her acts;" and, finally, it is submitted "that, in order to maintain this motion, this honorable Court must be prepared to hold and decide that the said act of 1894 is either constitutional or unconstitutional, in whole or in part, and base its actions upon such decision."

The attorney general contends, first, that this is a motion made by counsel for appellants to dismiss these appeals, or to declare these cases abandoned, and that such a motion cannot be entertained for want of proper notice. There is nothing in the record which justifies the assumption that appellants have made a motion for that purpose or any other purpose; and, on the contrary, their counsel, in their argument, expressly disavow any such purpose. Hence, without stopping to inquire whether the letter referred to in the argument would not be sufficient notice, if this could be regarded as a motion, it is enough to say that, in my

judgment, there is no motion of any kind submitted to the Court by appellants, and, therefore, the preliminary objection presented by the attorney general cannot be sustained.

The true view is that this is nothing more than information spread before the Court of a fact, to wit: the passage of the act of 1894 repealing the charter of the Port Royal and Augusta Railway Company; and the position, as I understand it, of counsel for appellants, is that, with this fact before it, the Court, *sua sponte*, will decline to proceed further with these cases, because there is now no practical question left for the Court to decide. It is well settled that a court will not undertake to decide mere abstract or speculative questions; for, as is well said by Mr. Justice McGowan, in *State* v. *Gaithers*, 15 S. C., at page 372: "This Court cannot consider merely speculative questions and give opinions upon disputed points of law. Our duty is to pronounce practical judgments; to settle and determine the rights of parties. There must be an actual existing case to call into exercise the judgment of the Court." So in *Ex parte Pereira*, 6 Rich., 149, where the petitioner had appealed from an order refusing the writ of *habeas corpus*, and, pending his appeal, the petitioner had placed himself beyond the jurisdiction of the Court; upon this fact being brought to the attention of the Court, it refused to hear the appeal, upon the ground that the Court would be doing "a vain act to hear this appeal," and accordingly the case was stricken from the docket. So, also, in the case of *State* v. *Murrell*, 33 S. C., 83, where a person had been convicted of murder, and given notice of appeal, and pending such appeal he had escaped from jail, and thereby placed himself beyond the jurisdiction of the Court, the Court, *sua sponte*, declined to hear such appeal, upon the authority of *Ex parte Pereira*, *supra; Smith* v. *U. S.*, 94 U. S., 97; *Bonahan* v. *Nebraska*, 125 U. S., 692; *People* v. *Redinger*, 55 Cal., 290 (reported, also, in 36 Am. Rep., 32); and *State* v. *Wright*, 32 La. Ann., 1017 (reported, also, in 30 Am. Rep., 274). Again, in the case of *Cantwell* v. *Williams*, 14 S.

E., 549, which was a contest as to the office of supervisor of registration, in which, pending an appeal, Cantwell was removed from office by the proper authority, this Court, *sua sponte*, declined to hear the appeal, upon the ground that there was no longer a *practical* question for the Court to decide. In support of that view, among other authorities cited, was the case of *U. S.* v. *Boutwell*, 17 Wall., 607, in which the application was for a mandamus requiring Boutwell, as secretary of the treasurer, to pay an order on the treasury; and, the application having been refused by the Supreme Court of the District of Columbia, the case was carried by writ of error to the Supreme Court of the United States. While the case was pending in that Court, Boutwell resigned his office and Richardson was appointed in his place. *Held* that, on the resignation of Boutwell, the writ must abate, in the absence of any statutory provisions to the contrary. In view of these authorities, as well as upon reasoning which it is unnecessary to go into here, it seems to me clear that if the act of 1894 is properly before the Court, and has the effect of repealing the charter of the Port Royal and Augusta Railway Company, then these cases are effectually ended, and this Court can render no *practical* judgment therein; for it is obvious that the continued existence of the Port Royal and Augusta Railway Company is an essential element in both of these cases, the scope and object of which have been substantially set forth above. In the first of the cases, the object being to prevent the continued domination and control of the Port Royal and Augusta Railway Company by the Georgia Central Railroad and Banking Company, obtained by the alleged illegal acquisition of the majority of the stock and voting power of the Port Royal and Augusta Railway Company, or, if that is not practicable, to forfeit the charter of the last named company, of course, if the charter of such company has already been forfeited by the act of 1894, there is no longer any stock or voting power in the extinct Port Royal and Augusta Railway Company;

and the question whether the Georgia Central Railroad and Banking Company had heretofore, legally or illegally, acquired the majority of such extinct voting power, has become a fruitless inquiry; and surely it would be a work of supererogation, to say the least of it, for the Court to declare a charter forfeited after it had been repealed by an act of the legislature. So, also, in the second case, one of the essential elements—one without which it could neither have been instituted nor can it be continued—is the fact that the Port Royal and Augusta Railway Company was, and still is, a corporation, for the action purports to be brought by the plaintiffs as stockholders of such corporation, for the purpose of having the ownership of the stock and voting power of certain other alleged stockholders declared illegal and void, and for the purpose of having an accounting between the two corporations, the Port Royal and Augusta Railway Company, and the Central Railroad and Banking Company; and, if one of these alleged corporations has become extinct by the forfeiture of its charter, there are now no longer any stockholders therein capable of maintaining an action like this.

It is urged, however, that in both of these cases a receiver of the property and assets of the Port Royal and Augusta Railway Company has been asked for and appointed, and, therefore, it is necessary that these cases should be retained and continued, in order that the accounts of such receiver may be adjusted, and he be discharged. But it seems to me that the appointment of a receiver is merely ancillary to the main purposes and objects of the action, and when these fail, the receivership necessarily terminates also. Besides, as will hereinafter be shown, these matters can more properly be adjusted in another proceeding which has been instituted by the attorney general, and brought to our attention in the paper styled "Information and return of the State of South Carolina."

It is contended, however, by the attorney general, that this Court cannot take notice of the act of 1894, repealing

the charter of the Port Royal and Augusta Railway Company, because it is not a public but a private act, and has not been brought to the attention of the Court by any recognized mode of pleading or proof. It seems to me that this question is conclusively determined by the provisions of the charter of the Port Royal and Augusta Railway Company adversely to the view contended for by the attorney general; for it appears by the allegations of the complaint in the case first above stated, that, when the Port Royal Railroad Company was first chartered, it was invested with all the powers, rights, and privileges conferred upon the Spartanburg and Union Railroad Company, and the act incorporating that company is expressly declared to be a public act. 11 Stat. at Large, at page 570. And as it also appears in the complaint that when the Port Royal Railroad was sold, and the purchasers at said sale were incorporated, and the new company, by the name and style of the Port Royal and Augusta Railway Company, was formed, it was invested with all of the powers, rights, and privileges formerly conferred upon the Port Royal Railroad Company, one of which was holding its charter under an act expressly declared to be a public act. But, aside from and in addition to this, it seems to me that, under the case of *Bank of Newberry* v. *Greenville & C. R. R. Co.*, 9 Rich., 495, even without such express declaration, the charter of the Port Royal and Augusta Railway Company must be regarded as a public act; for in that case it was held that the charter of the Bank of Newberry, even though the act conferring the charter contained no express declaration to that effect, should be regarded as a public act, because the corporation thereby created was of a public character, and the exercise of its franchises affected the whole community. In that case, his Honor, Judge Glover, in delivering the opinion of the Court of Errors, said: "The distinction between a public and a private act does not depend upon the clause, which is often inserted, directing that it shall be deemed and taken as a public act. We must look to the objects and purposes

contemplated, and the scope and general provisions of the act, to ascertain its character. * * * Numerous instances may be cited to mark the distinction, where the legislature has failed to do so expressly." He cites the case of *Bank* v. *Smedes*, 3 Cow., 684, as showing the inclination of the Court is to regard all acts which incorporate banks as public acts, without regard to their connection with the revenue, and quotes the Chancellor as saying in that case: "I am not prepared to admit that a law incorporating a bank is a private act, which must be recited in every suit against a corporation. These institutions are public in their character, and their operations affect the whole community." See, also, Potter's Dwar. St., p. 53, where it is said: "Generally speaking, statutes are public, and a private statute may rather be considered an exception to the general rule." And in note 2 to that page, it is said: "Laws creating banks of issue, though not declaring themselves public, are public laws," citing *Smith* v. *Strong*, 2 Hill (N. Y.), 241; *Bank* v. *Smedes, supra.* Now, if an act incorporating a bank is to be regarded as a public act, because it is designed to forward public purposes, and the exercise of its franchises affects the whole community, how much more true is this of an act incorporating a railroad company, and conferring upon it the power to construct a railroad, characterized in many of the cases as an "improved highway," and permitting it to exercise the sovereign right of eminent domain. Judge Dillon, in his great work on Municipal Corporations, in section 105*a* of his second edition, after discussing the question as to the power of the State to authorize a municipal corporation to subscribe to the stock of a railroad company, and tax the property of individuals within its corporate limits to pay the indebtedness thereby incurred, and after arraying the authorities on the one side and the other, especially the cases in the Supreme Court of the United States which justify the exercise of such a power, uses this language: "The Supreme Court, in reaching this result, places its judgment upon the ground that highways,

turnpikes, canals, and railways, although owned by individuals under public grants or by private corporations, are *publici juris;* that they have always been regarded as governmental affairs, and their establishment and maintenance recognized as among the most important duties of the State, in order to facilitate transportation and easy communication among its different parts; and hence the State may put forth, in favor of such improvements, both its power of eminent domain (as it constantly does) and its power to tax, unless there be some special restriction in the Constitution of the particular State. These powers may, in the judgment of the Court, be lawfully exerted, because the use is in its nature a public use, and these works are subject to public control and regulation (except so far as this right has been lawfully parted with by valid legislative contract), notwithstanding they may be exclusively owned by private persons or corporations." See, also, to same effect, *State* v. *Whitesides*, 30 S. C., at page 584; *State* v. *Neely*, 30 S. C., at page 604. Upon similar grounds, legislation controlling the operations of railroad corporations by fixing the rate of charges requiring such companies to pay the expenses of a railroad commission, and in many other ways, has been justified both by the Supreme Court of the United States and of this State. This shows beyond all dispute that a railroad company is of such a public character, and devoted to such public uses, as to require that an act incorporating such a company must necessarily be regarded as a public act.

If, then, the original act conferring the charter of the Port Royal and Augusta Railway Company must be regarded as a public act, then any act supplementing, amending or repealing such act must likewise be regarded as a public act. See *Unity* v. *Burrage*, 103 U. S., 447, and *State* v. *Hoeflinger*, 31 Wis., 257, cited in 23 Am. & Eng. Enc. Law, 146. I am, therefore, of opinion that the act approved 3d of January, 1894, repealing the charter of the Port Royal and Augusta Railway Company, is a public act,

of which this Court is bound to take judicial cognizance when brought to its notice.

But even if I am in error in that view, and the repealing act above referred to must be regarded as a private act, then it seems to me that, under the provisions of section 184 of the Code of Procedure, this Court can and should take judicial cognizance of said act. That section reads as follows: "In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its title and the day of its passage, and the Court shall thereupon take judicial notice thereof." Certainly the reference to this repealing statute over and again in this proceeding is quite sufficient to bring such statute before the Court.

But, again, it is contended by the attorney general, that because of the fact, as he alleges, that the same counsel who now submits to the Court the proposition, that these cases have been terminated by the repeal of the charter of the Port Royal and Augusta Railway Company, has, in certain other cases (referred to in the "Information and return of the State of South Carolina," to which these appellants, along with others, are parties, which cases are now pending in other jurisdictions), taken the position that the repealing act of 1894 is unconstitutional, null, and void, for that reason, it is urged that this Court cannot now determine the question whether these cases have been ended, without first determining the question as to the validity of said repealing act. It will be observed that no party to these proceedings has raised herein any question as to the validity of said repealing act. Counsel for appellants certainly do not, for the proposition which they contend for necessarily rests upon the assumption that the repealing act of 1894 is a valid and constitutional exercise of legislative authority; and the attorney general explicitly states in his "Information and Return" that "the State, of course, maintains the validity of her act in its entirety;" and, in his argument, the attorney general says: "We are, of course, ready to meet the objections, and maintain the validity of the act,

but we submit to the Court that this is not the proper time nor the proper method." So that here the Court is called upon to decide a proposition which rests entirely upon the assumption of the validity of an act of the legislature which neither of the parties assails in this proceeding. Under these circumstances, it seems to me that it is asking too much of this Court to *volunteer* to hunt up objections to the constitutionality of the repealing act of 1894. Such a course would, in my judgment, be in flagrant violation of the well settled rule, which has been recognized and acted upon in several very recent cases, that the Court will not undertake to consider or determine the constitutionality of an act of the legislature, even where the question is made by the parties, unless it is necessary for the decision of the case, and surely the Court should not do so in a case where neither of the parties raises any such question. This act is found upon the statute book, and, where neither of the parties assails its validity in this proceeding, it seems to me that the Court is bound to regard it as a valid exercise of legislative authority, until it is clearly shown to be otherwise. The fact that we are unofficially informed that, in other cases pending in other jurisdictions, the validity and constitutionality of this act has been assailed, should not influence the action of the Court in this case. We do not know, and cannot know, whether this assault upon the validity of the act will be persisted in, in those other cases, which are not now before us, or, if so, what will be the result of such attack. All that we do now know, or can properly know, is that, in this proceeding, the repealing act is assumed by all parties to be valid and constitutional, and I think the Court is bound to so regard it in this proceeding.

Again, it is urged that it is necessary that this Court should retain jurisdiction of these cases in order to determine, first, in what Court—the State or United States Court—the receiver heretofore appointed should account, and by what Court he should be discharged. This, however, is a matter which should have been thought of before

the passage of the repealing act, and suitable provisions to effect that end should have been inserted in that act. But, be that as it may, it seems to me that when the State, in the exercise of its sovereign authority, repealed the charter of the Port Royal and Augusta Railway Company, it effectually put an end to both of these cases, and left nothing of which this Court could take jurisdiction. I may add, however, that inasmuch as this Court has been informed, by the statements made in the "Information and return of the State of South Carolina," that the attorney general has already instituted an action in the Court of Common Pleas for Beaufort County, as directed by the repealing act of 1894, to carry into effect the provisions of that act, I see no reason why the receiver heretofore appointed may not be called to account in that action, as the person now in possession of the property and assets of the corporation dissolved by that act; for the second section of the repealing act reads as follows: "That the attorney general of this State be, and he is hereby, directed and instructed to institute forthwith proper proceedings to liquidate the said corporation to restrain it, or its stockholders or creditors, or any or either of them, from in any way asserting or exercising, or attempting to assert or exercise, any rights, privileges or franchises as a corporation, to have a receiver appointed of all the property and assets of the said corporation, to have its accounts duly taken and audited, to have its said property and assets sold, and distribution of the proceeds thereof made among its several creditors and stockholders, in accordance with law."

Again, it is contended by the attorney general that the action last above referred to, which he has instituted in the Court of Common Pleas for Beaufort County, is "practically a supplemental bill or bill of revivor, and must be taken as such." As the complaint in that case is not before us, we have no means of determining what purports to be its nature. It is enough, however, to say that, no matter what such complaint may contain, it

cannot be regarded either as a supplemental bill or a bill of revivor in these cases, for the reason that there can be no such bill brought against a defunct corporation.   Such a bill may be proper enough in a case where a *natural* person dies pending an action, for in such case the personal representatives of the deceased may be brought in as parties; but in case of a defunct corporation, which has, and can have, no personal representatives, such a course becomes impossible.   The two cases cited by counsel for appellants are conclusive as to this point.   In *Bank* v. *Colby*, 21 Wall., 609, where the charter of the plaintiff was declared forfeited by proper authority, a pending action brought by Colby against the bank was held finally abated. In that case, Mr. Justice Field, in delivering the opinion of the Court, uses this language: "With the forfeiture of its rights, privileges, and franchises, the corporation was necessarily dissolved, as the decree adjudged. Its existence as a legal entity was thereupon ended.   It was then a defunct institution, and judgment could no more be rendered against it in a suit previously commenced than judgment could be rendered against a dead man, dying *pendente lite*. This is the rule with respect to all corporations whose chartered existence has come to an end, either by lapse of time or decree of forfeiture, unless, by statute, pending suits be allowed to proceed to judgment notwithstanding such dissolution.   The prolongation of the corporate life for this specific purpose as much requires special legislative enactment as does the original creation of the corporation."   And he proceeds to quote, with approval, the following language, used by Story, J., in *Greeley* v. *Smith*, 3 Story, 658: "I cannot distinguish between the case of a corporation and the case of a private person dying *pendente lite*.   In the latter case the suit is abated at law, unless it is capable of being revived by the enactment of some statute, as is the case as to suits pending in the Courts of the United States, when, if the right of action survives, the personal representatives of the deceased party may appear and prosecute or defend

the suit.    No such provision exists as to corporations, nor, indeed, could exist, without reviving the corporation *pro hac vice;* and, therefore, any suit pending against it at its death abates by mere operation of law." The same doctrine was recognized in the recent case of *Pendleton* v. *Russell*, 144 U. S., 640. Of course, the same doctrine will apply to a corporation whose existence has been terminated by an act repealing its charter; and as we have no statute here, so far as I am informed, authorizing the continuance of an action against a defunct corporation, the conclusion necessarily follows that these two cases have abated by the repeal of the charter of the Port Royal and Augusta Railway Company, and this Court can now render no judgment herein.

I do not think that the case of *Pomeroy's Lessee* v. *Bank of Indiana*, 1 Wall., 23, which has been cited, is in point. There, pending an action against the bank, its charter expired by its own limitations, and it was contended that the action thereby abated; but the Court held that the action did not abate, because the act limiting the period for the exercise of banking powers expressly provided that it should have all the "necessary and incidental powers to collect and close up its business," which, of course, implied that the pending action should be continued for the purpose of enabling the bank to "close up its business." Here, however, there is no such provision in the repealing act of 1894. On the contrary, that act directs the institution of *another* action for the same purpose practically as the action first above stated. It may possibly be said that the act of 1894, above referred to, does not effect a final and immediate repeal of the charter of the Port Royal and Augusta Railway Company, by reason of the provisions of the fifth section of that act, which reads as follows: "Nothing in this act contained shall prevent the running and operation of the said railroad, with all the privileges and franchises named in the said charter, until such time as such railroad shall be sold under any judicial proceedings, and delivery made to the purchasers thereof." But in view of

the explicit declaration in the first section of that act— "that the charter of the Port Royal and Augusta Railway Company, a corporation created by and existing under the laws of this State, be, and the same is hereby, repealed, and that the said corporation be, and the same is hereby, dissolved"—I do not see how any such contention can be sustained. It will be observed that the provision is *not* that the charter shall at some time in the future be repealed, but that said charter *is* hereby repealed, and the said corporation *is* hereby dissolved. So that, the moment that the act took effect, the charter was at once repealed, and the corporation was dissolved. The only effect of the provision of the fifth section above quoted is to enable the receiver, whose appointment is provided for in the second section, to continue to operate the railroad until it is sold. It certainly does not provide for the continuance of any pending action, for there is nothing in the act to warrant any such idea. On the contrary, the provisions of the second section, which have been quoted in full above, plainly show that such was not the intention of the legislature, as a new action is there expressly directed to be brought, which is inconsistent with any pending suit.

I am, therefore, compelled to conclude that both of the cases mentioned in the title of the opinion have been abated and finally ended, and, therefore, this Court can no longer exercise jurisdiction of any of the questions raised in said cases.